**E-FILED**
Monday, 01 December, 2008  03:26:29 PM
Clerk, U.S. District Court, ILCD

MJD/HPS/cmj/443989

240-252-29-750

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>LAWRENCE, MOORE, OGAR & JACOBS, and its partners, WILLIAM LAWRENCE, an individual, FRED MOORE, an individual, HELEN OGAR, an individual, and KEVIN P. JACOBS, an individual, BETTY L. POTASNAK, an individual, VICKI COOK MUHS, an individual, and PK MANAGEMENT CO., INC., an Illinois corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME Plaintiff, Hartford Casualty Insurance Company ("Hartford"), by and through its attorneys, TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP, and for its Complaint against the Defendants, LAWRENCE, MOORE, OGAR & JACOBS, ("LMOJ") and its partners, WILLIAM LAWRENCE, ("Lawrence") an individual, FRED MOORE, ("Moore") an individual, HELEN OGAR, ("Ogar") an individual, and KEVIN P. JACOBS, ("Jacobs") an individual, BETTY L. POTASNAK, ("Potasnak") an individual, VICKI COOK MUHS, ("Muhs") an individual, and PK MANAGEMENT CO., INC., ("PKMC") an Illinois corporation, states as follows:

## STATEMENT OF CASE

1.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, for the purpose of determining an actual controversy between the parties, construing the rights and legal obligations arising under a contract of insurance issued by Hartford to LMOJ in Illinois under which the Defendants, LMOJ, a law firm and its partners, Lawrence, Moore, Ogar and Jacobs are insureds. Hartford seeks a declaration from this Court that it owes neither defense nor indemnity obligations under the referenced policy of insurance with respect to the Defendants' liability in a lawsuit which was filed and is currently pending in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, styled as <u>Betty L. Potasnak, Vicki Cook Muhs and PK Management, Co., Inc. v. Kevin P. Jacobs, Lawrence, Moore, Ogar & Jacobs, and its partners, William Lawrence, Fred Moore and Helen Ogar Costigan & Wallrab, P.C. and its shareholders, David C. Wochner, Robert W. Neirinck, Dawn L. Wall, Robert S. White, Sheldon L. Bane, Carrie L. Borowski, Dominic A. Salvati, Geoffrey B. Dodds</u>, filed under Case No. 2008 L 078 ("<u>Potasnak</u> suit")

## PARTIES

2.      Hartford is an insurance company formed under the laws of the State of Connecticut and duly authorized under the laws of the State of Illinois to engage in the business of writing various types of insurance, including professional liability insurance policies.

3.      Upon information and belief, LMOJ is an Illinois law firm authorized and doing business in Bloomington, Illinois.

4.      Upon information and belief, Lawrence is an individual and resident of Illinois, doing business in Bloomington, Illinois.

2

5.    Upon information and belief, Moore is an individual and resident of Illinois, doing business in Bloomington, Illinois.

6.    Upon information and belief, Ogar is an individual and resident of Illinois, doing business in Bloomington, Illinois.

7.    Upon information and belief, Jacobs is an individual and resident of Illinois, doing business in Bloomington, Illinois.

8.    Upon information and belief, Potasnak is an individual and resident of Illinois, doing business in Bloomington, Illinois.  Potasnak is named herein solely as an interested party to be bound by the judgment herein.

9.    Upon information and belief, Muhs is an individual and resident of Illinois, doing business in Bloomington, Illinois.  Muhs is named herein solely as an interested party to be bound by the judgment herein.

10.   Upon information and belief, PKMC is an Illinois corporation authorized and doing business in Bloomington, Illinois.  PKMC is named herein solely as an interested party to be bound by the judgment herein.

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 exclusive of costs and interest, and the parties hereto are citizens of different states.

12.   Venue is proper in this District pursuant to 28 U.S.C. 1391 as this case involves a liability insurance policy issued to LMOJ within this District.

## FACTUAL BACKGROUND

13.     Hartford issued a certain claims-made policy of liability insurance to LMOJ and its partners bearing policy No. 83 SBA UP6298, with an effective period of December 21, 2007 to December 21, 2008, and with a retroactive date of December 21, 2006. A copy of this policy is attached hereto and incorporated herein as Exhibit A.

14.     On or about March 17, 2008, the Potasnak plaintiffs filed a lawsuit in the Seventh Judicial Circuit of Sangamon County, Illinois bearing Court No. 08 L 078 against LMOJ, Jacobs, Lawrence, Moore and Ogar and others ("Potasnak suit"). A copy of the Complaint in the Potasnak suit is attached hereto as Exhibit B.

15.     The Potasnak plaintiffs allege that Jacobs and LMOJ failed to properly prosecute three appeals of an underlying matter where Jacobs and LMOJ represented Potasnak, et al. as permissive intervenors in a proceeding in McLean County, Illinois, known as Roadway Inn – Bloomington, v. Manshera Corp., filed under case number 03 CH 249 ("Roadway suit").

16.     After the Illinois Appellate Court issued Rules to Show Cause for failure to prosecute the appeals, the first two appeals involving the Roadway suit were dismissed on or about March 17, 2006. The third appeal was dismissed on or about July 27, 2006.

17.     LMOJ and Jacobs received copies of the Appellate Court's March 17, 2006 Orders dismissing the first two Roadway suit appeals.

18.     The Potasnak complaint alleges that Jacobs and LMOJ failed to file a timely notice of appeal in the Roadway matter; failed to properly file the record on appeal in a timely manner; failed to timely file the required briefs; failed to obtain a stay on execution of the adverse judgment notwithstanding the fact that Potasnak, et al. allegedly provided the insureds with a *supersedeas* bond; and that they failed to timely object to a motion by the appellees to

4

dismiss one of the appeals. As a result, Potasnak, et al. claim that they sustained damages in excess of $50,000, as the adverse judgment was enforced. (See, Exhibit B.)

19.     On or about April 11, 2008 LMOJ tendered their defense in the <u>Potasnak</u> suit to Hartford.

20.     On or about May 15, 2008, Hartford denied defense and indemnity to LMOJ in the <u>Potasnak</u> suit.

21.     Hartford Policy No. 83 SBA UP6298 contains the following Insuring Agreement language:

**LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM**

**(CLAIMS MADE)**

\* \* \*

### SECCTION I: INSURING AGREEMENT AND CLAIMS MADE CLAUSE

#### A.     COVERAGE AGREEMENT

Subject to the Limits of Liability, the Company shall pay on behalf of the "insured" all sums in excess of the deductible which the "insured" shall become legally obligated to pay as "damages" by reason of any act, error, or omission, including "claims" arising out of "personal injury", committed or alleged to have been committed prior to the end of the "policy period" and subsequent to the "retroactive date", provided always that:

1.     The "insured's" liability arises out of the "insured" performing or failing to perform "professional services" for others;

2.     Such "damages" result from a "claim" that is first made against the "insured" during the "policy period" and is reported in writing to the Company immediately but in no event later than sixty (60) days after the expiration of the "policy period";

3. With respect to an act, error, omission, or "personal injury" committed or alleged to have been committed prior to the "policy period", no other valid and collectible insurance is available; and

4. As of the effective date of this Coverage Form, no "insured" knew or could have foreseen that such act, error, omission, or "personal injury" could result in a "claim".

(See, Exhibit A).

22. The Hartford policy contains the following Definitions:

## B. DEFINITIONS

Whenever used in this Coverage Form:

1. "Claim" means a notice received by an "insured" from a person or entity advising that it is the intention of that person or entity to hold the "insured" liable for "damages" for an act, error, omission, or "personal injury" covered under this Coverage Form. "Claim" includes but is not limited to:

   a. A demand received by an "insured" for money or services;

   b. The service of suit or institution of arbitration proceedings; or

   c. A request received by an "insured" for a tolling agreement with respect to statutes of limitations or for other extension to allow the filing or maintenance of "claims" against the "insured".

      Except as otherwise provided in SECTION **I**: INSURING AGREEMENT AND CLAIMS MADE CLAUSE, subsection **F**., AWARENESS PROVISIONS, a "claim", as described in the preceding paragraph, shall be deemed to have been made on either the date that a complaint or similar document is served on the "insured" or on the date an "insured" receives a demand, notice, or request.

      * * *

5. "Insured" means:

    **a.**    The "named insured" and any "predecessor firm(s)";

    **b.**    Any lawyer who:

        **(1)**    Was a principal, shareholder, partner, shareholder of a partner, member, officer, director, or employee of any "predecessor firm(s)";

        **(2)**    Who was, is, or becomes a principal, shareholder, partner, shareholder of a partner, member, officer, director, or employee of the "named insured",

            but solely while such lawyer is/was acting within the scope of his or her duties on behalf of the "named insured" or "predecessor firm(s)";

**6.**    "Named insured" means the individual or entity designated in the Declarations.

            \* \* \*

**10.**    "Predecessor firm" means any lawyer, law firm, or professional legal corporation engaged in the practice of law to whose financial assets and liabilities the "named insured" is the majority successor in interest.

            \* \* \*

**12.**    "Retroactive date" means the date specified in the Declarations, or in any endorsement attached to this Coverage Form, on or after which an act, error, omission, or "personal injury" must have occurred in order for any "claim" or any notification given to the Company pursuant to SECTION **I**: INSURING AGREEMENT AND CLAIMS MADE CLAUSE, subsection **F.**, AWARENESS PROVISIONS, arising from such act, error, omission, or "personal injury" to be covered under this Coverage Form.

(See, Exhibit A).

    23.    The Hartford policy contains the following General Conditions:

      **SECTION IV: GENERAL CONDITIONS**

* * *

### D.    APPLICATION

In granting coverage under this Coverage Form, the Company has relied on the representations made in the process of applying for the policy.    All such representations are the basis of coverage under this insurance.

By acceptance of this Coverage Form, the "insured" agrees that, with respect to any statements in the application process:

1.    The statements in the application are the true and correct representations of the "insured", each shall be deemed material to the acceptance of the risk or the hazard assumed by the Company under this insurance, and this Coverage Form is issued in reliance upon the truth and accuracy of such representation;

2.    In the event misrepresentations are made or the "insured" fails to state facts which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Form, this insurance in its entirety shall be void and of no effect whatsoever;

3.    This Coverage Form shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts with each "insured"; and

4.    Any statements or representations made to any agent of the Company shall be deemed to be made to the Company itself.

(See, Exhibit A.)

## COUNT I

24.    Plaintiff incorporates and restates the allegations of paragraphs 1 through 23 above as if fully set forth herein.

25.     Plaintiff has no duty to defend or indemnify LMOJ in the underlying Potasnak suit under the grant of coverage set forth in Section I(A) of the Insuring Agreement of the Hartford policy because the alleged wrongful conduct of which the Potasnak plaintiffs complain occurred prior to the retroactive date of December 21, 2006.

26.     An actual controversy exists between the parties with respect to their respective duties and obligations under the subject policies. This Court has the power to make binding declarations of the rights and duties of the parties herein, and to adjudicate the dispute between the parties herein.

WHEREFORE, Plaintiff, Hartford Casualty Insurance Company prays that this Court enter the following relief:

> A.      Finding that Hartford Casualty Insurance Company owes no duty to defend or indemnify LMOJ in the Potasnak suit; and
>
> B.      For all such just and equitable relief, including costs for this suit.

## COUNT II

27.     Plaintiff incorporates and restates the allegations of paragraphs 1 through 23 above as if fully set forth herein.

28.     Plaintiff has no duty to defend or indemnify LMOJ in the underlying Potasnak suit under Section I(A)(4) of the Insuring Agreement since LMOJ knew or could have foreseen as of the effective date of the coverage that Jacobs' alleged wrongful act in failing to timely file and properly prosecute an appeal of the adverse judgment from the Roadway suit could result in the basis of a claim.

29.     An actual controversy exists between the parties with respect to their respective duties and obligations under the subject policies. This Court has the power to make binding

declarations of the rights and duties of the parties herein, and to adjudicate the dispute between the parties herein.

WHEREFORE, Plaintiff, Hartford Casualty Insurance Company prays that this Court enter the following relief:

A.    Finding that Hartford Casualty Insurance Company owes no duty to defend or indemnify LMOJ in the Potasnak suit; and

B.    For all such just and equitable relief, including costs for this suit.

## COUNT III

30.    Plaintiff incorporates and restates the allegations of paragraphs 1 through 23 above as if fully set forth herein.

31.    Plaintiff has no duty to defend or indemnify LMOJ in the underlying Potasnak suit since LMOJ made misrepresentations by failing to disclose the facts out of which the Potasnak suit arose in the Hartford application and therefore coverage under the Hartford policy is voided pursuant to Section IV(D) of the Hartford policy General Conditions and 215 ILCS 5/154 of the Illinois Statutes.

32.    Accordingly, the Hartford policy should be ordered rescinded.

WHEREFORE, Plaintiff, Hartford Casualty Insurance Company prays that this Court enter the following relief:

A.    Finding that Hartford Casualty Insurance Company owes no duty to defend or indemnify LMOJ in the Potasnak suit;

B.    The Hartford policy is rescinded; and

C.    For all such just and equitable relief, including costs for this suit.

10

Respectfully submitted,

HARTFORD CASUALTY INSURANCE COMPANY

By: _____
                One of Its Attorneys

Michael J. Duffy
Huma P. Shah
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6308
(312) 627-4000

# Hartford Spectrum

Business Insurance Policy



Date: __October 3, 2008 _____

THE
HARTFORD

Based on a review of electronic and hardcopy records, I certify that the attached
is a true and correct representation of our records for

SABC

83 SBA UP6298_____
Hartford policy number

Effective: 12/21/2007_ through_12/21/2008__
      Effective Date           Expiration date

RECEIVED

OCT 06 '08

CORP. CLAIM HQ

Issued by: ___Hartford Fire Insurance Company _____
           Writing company

[  ]  I am unable to certify the above due to missing information from the policy.
The following form or endorsement is missing and can not be replicated.

| |
|---|
| |
| |
| |

_Robert Ramirez_____
Name
Professional Support Department

__San Antonio_____
Hartford Office Location

SAN ANTONIO BUSINESS CENTER
P.O. BOX 33015
SAN ANTONIO, TX 78265-3015
Toll Free 800 447 7649
Facsimile 800 375 9917

98
62
UP
SBA

This **Spectrum Policy** consists of the Declarations, Coverage Forms, Common Policy Conditions and any other Forms and Endorsements issued to be a part of the Policy. This insurance is provided by the stock insurance company of The Hartford Insurance Group shown below.

**INSURER:**  HARTFORD CASUALTY INSURANCE COMPANY
          HARTFORD PLAZA, HARTFORD, CT 06115
COMPANY CODE: 3

**Policy Number:**  83 SBA UP6298  SA

## SPECTRUM POLICY DECLARATIONS          COPY

**Named Insured and Mailing Address:**          LAWRENCE, MOORE, OGAR & JACOBS
(No., Street, Town, State, Zip Code)

          108 W. MONROE ST.
          BLOOMINGTON          IL   61701

**Policy Period:**          **From**     12/21/07     **To**     12/21/08     1     YEAR
12:01 a.m., Standard time at your mailing address shown above. **Exception:** 12 noon in New Hampshire.

**Name of Agent/Broker:** SNYDER & SNYDER AGENCY INC
**Code:**  850664

**Previous Policy Number:** 83 SBA UP6298

**Named Insured is:** PARTNERSHIP

**Audit Period:** NON-AUDITABLE

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

**TOTAL ANNUAL PREMIUM IS:**          $5,772
IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE HARTFORD, YOUR POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT.

Countersigned by _____
                    Authorized Representative          Date

**Form SS 00 02 12 06**
**Process Date:** 10/09/07

**Page** 001 (CONTINUED ON NEXT PAGE)
**Policy Expiration Date:** 12/21/08

## SPECTRUM POLICY DECLARATIONS  (Continued)
**POLICY NUMBER:** 83 SBA UP6298

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by
Number below.

**Location:** 001        **Building:** 001

108 W. MONROE ST.
BLOOMINGTON        IL  61701

**Description of Business:**
LAWYERS & LAW FIRMS

**Deductible:** $1,000 PER OCCURRENCE

**BUILDING AND BUSINESS PERSONAL PROPERTY  LIMITS OF INSURANCE**

  **BUILDING**

    REPLACEMENT  COST              $    445,100

  **BUSINESS PERSONAL PROPERTY**

    **REPLACEMENT COST**            $     64,200

  **PERSONAL PROPERTY OF OTHERS**

    **REPLACEMENT COST**          NO COVERAGE

  MONEY  AND  SECURITIES

    INSIDE  THE  PREMISES         $    10,000
    OUTSIDE  THE  PREMISES       $     5,000

LOSS PAYEE: 'A' APPLIES
MORTGAGE HOLDER: 'B' APPLIES

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 83 SBA UP6298

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001      **Building:** 001

### PROPERTY OPTIONAL COVERAGES APPLICABLE   LIMITS OF INSURANCE
     TO THIS LOCATION

```
EARTHQUAKE: FORM SS 04 06
DEDUCTIBLE:    2%
BUILDING                                    $   445,100
BUSINESS PERSONAL PROPERTY                  $    64,200

STRETCH COVERAGES
FORM: SS 04 08
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

LIMITED FUNGI, BACTERIA OR VIRUS           $    50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:                          30 DAYS
```

53087

*2100083UP62980108

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 83 SBA UP6298

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS | LIMITS OF INSURANCE |
|---|---|
| BUSINESS INCOME AND EXTRA EXPENSE COVERAGE COVERAGE INCLUDES THE FOLLOWING COVERAGE EXTENSIONS: | 12 MONTHS ACTUAL LOSS SUSTAINED |
| ACTION OF CIVIL AUTHORITY: | 30 DAYS |
| EXTENDED BUSINESS INCOME: | 30 CONSECUTIVE DAYS |

EQUIPMENT BREAKDOWN COVERAGE
 COVERAGE FOR DIRECT PHYSICAL LOSS
 DUE TO:
  MECHANICAL BREAKDOWN,
  ARTIFICIALLY GENERATED CURRENT
  AND STEAM EXPLOSION

THIS ADDITIONAL COVERAGE INCLUDES
THE FOLLOWING EXTENSIONS
  HAZARDOUS SUBSTANCES            $   50,000
  EXPEDITING EXPENSES             $   50,000

MECHANICAL BREAKDOWN COVERAGE ONLY
APPLIES WHEN BUILDING OR BUSINESS
PERSONAL PROPERTY IS SELECTED ON
THE POLICY

IDENTITY RECOVERY COVERAGE        $   15,000
FORM SS 41 12

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 83 SBA UP6298

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| LIABILITY AND MEDICAL EXPENSES | $1,000,000 |
| MEDICAL EXPENSES - ANY ONE PERSON | $ 10,000 |
| PERSONAL AND ADVERTISING INJURY | $1,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU ANY ONE PREMISES | $ 300,000 |
| AGGREGATE LIMITS PRODUCTS-COMPLETED OPERATIONS | $2,000,000 |
| GENERAL AGGREGATE | $2,000,000 |

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 83 SBA UP6298

MORTGAGE HOLDER 'B':          HEARTLAND BANK & TRUST
                              PO BOX 67
                              BLOOMINGTON, IL. 61702


LOSS PAYEE 'A':               PAUL LAWRENCE & HELEN OGAR
                              108 W. MONROE
                              BLOOMINGTON, IL. 61701
            PROPERTY:         OFFICE BUILDING


**Form Numbers of Forms and Endorsements that apply:**

```
SS 00 01 04 93    SS 00 05 12 06    SS 00 07 07 05    SS 00 08 04 05
SS 24 99 12 02    SS 84 01 07 05    SS 01 23 09 07    SS 04 06 06 06
SS 04 08 07 05    SS 04 19 07 05    SS 04 30 07 05    SS 04 39 07 05
SS 04 41 07 05    SS 04 42 07 05    SS 04 44 07 05    SS 04 45 07 05
SS 04 46 07 05    SS 04 47 07 05    SS 04 80 03 00    SS 04 86 03 00
SS 40 18 07 05    SS 40 93 07 05    SS 41 12 09 05    IH 10 01 09 86
SS 05 47 09 01    SS 50 38 10 03    PC-373-2          SS 12 12 03 92
SS 50 19 06 03    SS 50 30 06 03    SS 38 25 09 05    SS 50 46 01 05
SS 83 76 02 06
```

# COMMON POLICY CONDITIONS

© 2006, The Hartford

## QUICK REFERENCE - SPECTRUM POLICY

### DECLARATIONS
### and
### COMMON POLICY CONDITIONS

## I.   DECLARATIONS

Named Insured and Mailing Address
Policy Period
Description and Business Location
Coverages and Limits of Insurance

## II.   COMMON POLICY CONDITIONS

Beginning on Page

| | | |
|---|---|---|
| **A.** | Cancellation | 1 |
| **B.** | Changes | 1 |
| **C.** | Concealment, Misrepresentation Or Fraud | 2 |
| **D.** | Examination Of Your Books And Records | 2 |
| **E.** | Inspections And Surveys | 2 |
| **F.** | Insurance Under Two Or More Coverages | 2 |
| **G.** | Liberalization | 2 |
| **H.** | Other Insurance - Property Coverage | 2 |
| **I.** | Premiums | 2 |
| **J.** | Transfer Of Rights Of Recovery Against Others To Us | 2 |
| **K.** | Transfer Of Your Rights And Duties Under This Policy | 3 |
| **L.** | Premium Audit | 3 |

**Form SS 00 05 12 06**



# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. If the first Named Insured cancels this policy, we will retain no less than $100 of the premium.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

© 2006, The Hartford

COMMON POLICY CONDITIONS

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of any person. And we do not represent or warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance - Property Coverage**

If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**I. Premiums**

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and
   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. If applicable, on each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and
   b. Determined in accordance with Paragraph **2.** above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Changes in exposures or changes in your business operation, acquisition or use of locations that are not shown in the Declarations may occur during the policy period. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Transfer Of Rights Of Recovery Against Others To Us**

Applicable to Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.
2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;
   b. A business firm:

      (1) Owned or controlled by you; or
      (2) That owns or controls you; or

COMMON POLICY CONDITIONS

   **c.**  Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**K.**  **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**L.**  **Premium Audit**

   **a.**  We will compute all premiums for this policy in accordance with our rules and rates.

   **b.**  The premium amount shown in the Declarations is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Any additional premium found to be due as a result of the audit are due and payable on notice to the first Named Insured. If the deposit premium paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

   **c.**  The first Named Insured must maintain all records related to the coverage provided by this policy and necessary to finalize the premium audit, and send us copies of the same upon our request.

Our President and Secretary have signed this policy. Where required by law, the Declarations page has also been countersigned by our duly authorized representative.

Richard G. Costello, Secretary

Neal S. Wolin, President



**Insurer:**  HARTFORD CASUALTY INSURANCE COMPANY
HARTFORD PLAZA, HARTFORD, CT 06115

This Declarations Page, with the Common Policy Conditions, Lawyers' Professional Liability Coverage Form and Endorsements, if any, issued to form a part thereof, shall together constitute this Lawyers' Profession al Liability Coverage Part, which in turn forms a part of Policy Number shown below.

None of the provisions of the policy to which this Coverage Part is attached, except for the Comm on Policy Conditions, Nuclear Energy Liability Exclusion, and any State Amendatory Endorsements modifying cancellation and/or non-renewal provisions apply to the Lawyers' Professional Liability insurance provided hereunder.

Wherever the word "policy" appears in this form or in endorsements attached to or made a part of this Coverage Part, it applies to the Lawyers' Professional Liability Coverage Form.

**POLICY NUMBER:**  83 SBA UP6298

## LAWYERS' PROFESSIONAL LIABILITY DECLARATIONS

**THIS IS CLAIMS MADE INSURANCE. PLEASE READ YOUR POLICY.**

**Named Insured and Mailing Address:**  LAWRENCE, MOORE, OGAR & JACOBS

108 W. MONROE ST.
BLOOMINGTON        IL 61701

**Policy Period**                **From:** 12/21/07        **To:** 12/21/08
**12:01 A.M., Standard time at the address of the named insured as stated herein.**

| | | |
|---|---|---|
| **Premium:** | **$ INCLUDED** | |
| **Limits Of Liability:** | $1,000,000 | Each Claim Limit |
| | $1,000,000 | Aggregate Limit |
| **Retroactive Date:** | 12/21/06 | If no date is entered, the Retroactive Date is the same as the effective date of this Coverage Part. |
| **Deductible:** | $  5,000 | Each and Every Claim |

**Form Numbers Of Forms and Endorsements that apply:** Common Policy Conditions, Form SS 00 05; Exclusion — Nuclear Energy Liability, Form SS 05 47

SS24011202        SS24151202        SS24981202

Countersigned by  _____

Authorized Representative                Date

**Form SS 24 99 12 02**
**Process Date:** 10/09/07                **Policy Expiration Date:**  12/21/08



# STRETCH SUMMARY

### SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Stretch Coverage form SS 04 08 which is included in this policy. No coverage is provided by this summary. Refer to coverage form SS 04 08 to determine the scope of your insurance protection.



| Coverage | Limit |
|---|---|
| Accounts Receivable – On/Off-Premises | $ 25,000 |
| Back Up of Sewer or Drain Water Damage | Included |
| Brands and Labels | Included |
| Claim Expenses | $ 10,000 |
| Computer Fraud | $ 5,000 |
| Computers and Media | $ 10,000 |
| Debris Removal | $ 25,000 |
| Employee Dishonesty (including ERISA) | $ 10,000 |
| Fine Arts | $ 10,000 |
| Forgery | $ 10,000 |
| Laptop Computers – World-Wide Coverage | $ 5,000 |
| Newly Acquired or Constructed Property | |
|     Building | $1,000,000 |
|     Business Personal Property | $ 500,000 |
| Off Premises Utility Services – Direct Damage | $ 10,000 |
| Outdoor Property ( $1,000 limit per item) | $ 20,000 aggregate |
| Outdoor Signs | Included |
| Pairs or Sets | Included |
| Personal Effects | $ 25,000 |
| Personal Property of Others | $ 10,000 |
| Property at Other Premises | $ 10,000 |
| Property Off-Premises | $ 15,000 |
| Salespersons' Samples | $ 1,000 |
| Temperature Change | $ 10,000 |
| Transit Property in the Care of Carriers for Hire | $ 10,000 |
| Valuable Papers and Records – On/Off-Premises | $ 25,000 |
| Valuation Changes | Included |

The following changes apply only if Business Income and Extra Expense are covered under this policy.

| | |
|---|---|
| Business Income at Newly Acquired Premises | $ 500,000 |
| Business Income Extension for Off-Premises Utility Services | $ 25,000 |
| Business Income Extension for Web Sites | $ 10,000/7 days |
| Business Income from Dependent Properties | $ 25,000 |
| Extended Business Income | 60 Days |

© 2005, The Hartford

53089

*21000083UP62980108



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

**COMMON POLICY CONDITIONS**
**MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM**
**SPECIAL PROPERTY COVERAGE FORM**
**STANDARD PROPERTY COVERAGE FORM**

Provisions **A.** through **C.** of this endorsement modify the **COMMON POLICY CONDITIONS**.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy by mailing written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy only for one or more of the following reasons:

    **a.** Nonpayment of premium;

    **b.** The policy was obtained through a material misrepresentation;

    **c.** You have violated any of the terms and conditions of the policy;

    **d.** The risk originally accepted has measurably increased;

    **e.** Certification of the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

    **f.** A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

    If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, any mortgagee or lienholder known to us and the agent or broker.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. Our notice of cancellation will state the reason for cancellation.

8. **Real Property Other Than Residential Properties Occupied By 4 Families Or Less:**

    The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

    If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation at least 10 days before the effective date of cancellation, if:

© 2007, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

a. After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

b. The building has been unoccupied 60 or more consecutive days. This does not apply to:

(1) Seasonal unoccupancy; or

(2) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

c. The building has:

(1) An outstanding order to vacate;

(2) An outstanding demolition order; or

(3) Been declared unsafe in accordance with the law.

d. Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The policy will terminate 10 days following receipt of the written notice by the named insured(s).

9. **Residential Properties Occupied By 4 Families Or Less:**

The following applies if this policy covers residential properties occupied by 4 families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

a. Nonpayment of premium;

b. The policy was obtained by misrepresentation or fraud; or

c. Any act that measurably increases the risk originally accepted.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

B. Paragraph **H., Other Insurance – Property Coverage** is replaced by the following:

H. **Other Insurance – Property Coverage**

1. You may have other insurance subject to the same plan, terms, conditions, and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

C. The following Conditions are added:

**Nonrenewal**

1. If we decide not to renew or continue this policy, we will mail you, your agent or broker, and any mortgagee or lienholder known to us written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

2. The following provision applies only if this policy covers residential properties occupied by 4 families or less:

a. If this policy has been issued to you and in effect with us for 5 or more years, we may not fail to renew this policy unless:

(1) The policy was obtained by misrepresentation or fraud;

(2) The risk originally accepted has measurably increased; or

(3) You received 60 days' notice of our intent not to renew as provided in **1.** above.

b. If this policy has been issued to you and in effect with us for less than 5 years, we may not fail to renew this policy unless you received 30 days' notice as provided in **1.** above.

**Mailing of Notices**

We will mail cancellation and nonrenewal notices to the last address known to us. Proof of mailing will be sufficient proof of notice.

D. The following Exclusion is added to Paragraph **B2. EXCLUSIONS** of the **SPECIAL PROPERTY COVERAGE FORM** or the **STANDARD PROPERTY COVERAGE FORM**.

1. We will not pay for loss or damage arising out of any act committed:

   a. By or at the direction of any insured; and

   b. With the intent to cause a loss.

   In the event of such a loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

2. However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

   a. The loss arose out of a pattern of criminal domestic violence; and

   b. The perpetrator of the loss is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **D.2.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

E. The following applies to the **MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM**, **SPECIAL PROPERTY COVERAGE FORM** or the **STANDARD PROPERTY COVERAGE FORM**.

The following is added to the **Legal Action Against Us** Condition:

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

F. The following applies to the **SPECIAL PROPERTY COVERAGE FORM** or the **STANDARD PROPERTY COVERAGE FORM**.

1. If this policy covers property described in **a.** and **b.** below, Paragraphs **2.** and **3.** apply:

   a. Real property used principally for residential purposes up to and including a four family dwelling; or

b. Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

2. The second paragraph of Paragraph **E.2. PROPERTY LOSS CONDITIONS** is replaced by the following:

   a. Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

   b. We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

      (1) You demanded the appraisal; and

      (2) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

3. Paragraph **C., Concealment, Misrepresentation Or Fraud** of the **COMMON POLICY CONDITIONS** is replaced by the following:

   C. **Concealment, Misrepresentation Or Fraud**

   1. This policy is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

      a. Was made with actual intent to deceive; or

      b. Materially affected either our decision to provide this insurance or the hazard we assumed.

      However, this condition will not serve as a reason to void this policy after the policy has been in effect for one year or one policy term, whichever is less.

   2. Notwithstanding the limitations stated in **C.1.** above, we may cancel the policy in accordance with the terms of Paragraph **A. Cancellation** in the **COMMON POLICY CONDITIONS**.

RR09171

# RR09171

ss04060606[1].pdf
10/03/08   07:12 AM





THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARTHQUAKE COVERAGE

This endorsement modifies insurance provided under the following:

STANDARD PROPERTY COVERAGE FORM
SPECIAL PROPERTY COVERAGE FORM

This insurance applies only when Earthquake Coverage is indicated in the Declarations of this policy.

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

A. The following are added to **COVERED CAUSES OF LOSS** in Paragraph **A.3.** in above forms:

   1. **Earthquake**, meaning a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or shifting of rock beneath the surface of the ground from natural causes.

   2. **Volcanic Eruption,** meaning the eruption, explosion or effusion of a volcano.

B. All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single Earthquake or Volcanic Eruption. The expiration of this policy will not reduce the 168-hour period.

C. We will not pay for physical loss or physical damage caused by or resulting from:

   1. Fire, explosion (other than volcanic explosion), landslide, mine subsidence, tidal wave, flood, mudslide or mudflow, even if attributable to an Earthquake or Volcanic Eruption.

   2. Any Earthquake or Volcanic Eruption that begins before the inception of this insurance.

But, if this policy replaces earthquake insurance that excludes physical loss or physical damage that occurs after the expiration of the policy we will pay for physical loss or physical damage by Earthquake or Volcanic Eruption that occurs on or after the inception of this insurance, if the series of Earthquake shocks or Volcanic Eruptions began within 168 hours prior to the inception of this insurance.

D. The **EARTH MOVEMENT EXCLUSION** does not apply.

E. The following **DEDUCTIBLE** applies to this Earthquake Coverage:

   1. We will subtract a sum from the amount of loss or damage in any one occurrence.

      a. The sum we subtract from each separate item will be a percentage of its value. The applicable percentage is shown in the Declarations.

      b. This Deductible applies separately to the following:

         (1) Each building or structure;

         (2) The contents of each building or structure; and

         (3) Personal property in the open.

Example:

When: The value of the property is $100,000

     The Earthquake Deductible is 5%

     The amount of loss is $20,000

Step (a): $100,000 x 5% = $5,000

Step (b): $ 20,000 - $5,000 = $15,000

The most we will pay is $15,000. The remaining $5,000 is not covered because of the Deductible.

   2. No deductible applies to any Time Element Coverage provided under this policy.

F. **LIMIT OF INSURANCE**

The Limit of Insurance that applies to coverage under this endorsement is the Limit of Insurance stated in the Declarations for Earthquake Coverage.

Form SS 04 06 06 06

Page 1 of 1

© 2006, The Hartford

# LAWYERS' PROFESSIONAL LIABILITY COVERAGE FORM (CLAIMS MADE)

© 2002, The Hartford

QUICK REFERENCE
LAWYERS' PROFESSIONAL LIABILITY
COVERAGE FORM (CLAIMS MADE)

READ YOUR POLICY CAREFULLY

|  | Beginning on Page |
|---|---|
| SECTION I: INSURING AGREEMENT AND CLAIMS MADE CLAUSE | 1 |
| A. COVERAGE AGREEMENT | 1 |
| B. DEFINITIONS | 2 |
| C. DEFENSE AND SETTLEMENT | 4 |
| D. LIMITS OF LIABILITY AND DEDUCTIBLE | 4 |
| E. TERRITORY | 5 |
| F. AWARENESS PROVISION | 5 |
| G. EXTENDED REPORTING PERIOD | 5 |
| SECTION II: EXCLUSIONS | 6 |
| SECTION III: CONDITIONS - CLAIMS | 8 |
| A. NOTICE OF CLAIM OR AWARENESS OF CIRCUMSTANCES – INSURED'S DUTIES | 8 |
| B. FALSE OR FRAUDULENT CLAIMS | 8 |
| C. ASSISTANCE AND COOPERATION OF THE INSURED | 8 |
| D. SUBROGATION | 9 |
| E. NO ACTION AGAINST COMPANY | 9 |
| SECTION IV: GENERAL CONDITIONS | 9 |
| A. OTHER INSURANCE | 9 |
| B. ASSIGNMENT | 9 |
| C. CHANGES | 9 |
| D. APPLICATION | 9 |
| E. ARBITRATION | 10 |

Form SS 24 01 12 02



# LAWYERS' PROFESSIONAL LIABILITY COVERAGE FORM
## (CLAIMS MADE)

THIS IS A CLAIMS MADE AND REPORTED COVERAGE FORM.  PLEASE READ ALL PROVISIONS AND CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS.  EXCEPT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS INSURANCE IS LIMITED TO ONLY THOSE "CLAIMS" THAT ARE FIRST MADE AGAINST THE "INSURED" DURING THE "POLICY PERIOD" AND REPORTED IN WRITING TO THE COMPANY IMMEDIATELY BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE EXPIRATION OF THE "POLICY PERIOD".  THIS COVERAGE FORM CONTAINS PROVISIONS THAT REDUCE THE LIMITS OF LIABILITY STATED IN THE DECLARATIONS BY "CLAIM EXPENSES", INCLUDING DEFENSE ATTORNEYS' FEES AND COSTS.  THE DEDUCTIBLE IS APPLICABLE TO "CLAIM EXPENSES" AND "DAMAGES".  UPON TERMINATION OF YOUR POLICY, "EXTENDED REPORTING PERIODS" OF VARIOUS DURATIONS WILL BE AVAILABLE.

Various provisions in this Coverage Form restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and what is not covered.

Words and phrases that appear in quotation marks are defined in DEFINITIONS (SECTION **IB.**) of this Coverage Form.

In consideration of the payment of the premium when due, and:

a.  In reliance upon the statements and representations made in the process of applying for this coverage; and

b.  Subject to the Limits of Liability as set forth in the Declarations and to all the Exclusions, Conditions, and all other terms of this Coverage Form and the policy which it forms part of,

the Company agrees with the "insured" as follows:

## SECTION I: INSURING AGREEMENT AND CLAIMS MADE CLAUSE

### A.  COVERAGE AGREEMENT

Subject to the Limits of Liability, the Company shall pay on behalf of the "insured" all sums in excess of the deductible which the "insured" shall become legally obligated to pay as "damages" by reason of any act, error, or omission, including "claims" arising out of "personal injury", committed or alleged to have been committed prior to the end of the "policy period" and subsequent to the "retroactive date", provided always that:

1.  The "insured's" liability arises out of the "insured" performing or failing to perform "professional services" for others;

2.  Such "damages" result from a "claim" that is first made against the "insured" during the "policy period" and is reported in writing to the Company immediately but in no event later than sixty (60) days after the expiration of the "policy period";

3.  With respect to an act, error, omission, or "personal injury" committed or alleged to have been committed prior to the "policy period", no other valid and collectible insurance is available; and

4.  As of the effective date of this Coverage Form, no "insured" knew or could have foreseen that such act, error, omission, or "personal injury" could result in a "claim".

© 2002, The Hartford

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

**B. DEFINITIONS**

Whenever used in this Coverage Form:

1. "Claim" means a notice received by an "insured" from a person or entity advising that it is the intention of that person or entity to hold the "insured" liable for "damages" for an act, error, omission, or "personal injury" covered under this Coverage Form. "Claim" includes but is not limited to:

    a. A demand received by an "insured" for money or services;

    b. The service of suit or institution of arbitration proceedings; or

    c. A request received by an "insured" for a tolling agreement with respect to statutes of limitations or for other extensions to allow the filing or maintenance of "claims" against the "insured".

    Except as otherwise provided in SECTION I: INSURING AGREEMENT AND CLAIMS MADE CLAUSE, subsection **F.**, AWARENESS PROVISIONS, a "claim", as described in the preceding paragraph, shall be deemed to have been made on either the date that a complaint or similar document is served on the "insured" or on the date an "insured" receives a demand, notice, or request.

2. "Claim expenses" means:

    a. All reasonable and necessary expenses for the investigation, defense, or settlement of any "claim", including but not limited to attorneys' fees, arbitrators' fees, court costs, and expenses incurred in obtaining expert witnesses;

    b. All costs taxed against the "insured" in any suit defended by the Company;

    c. All interest on the entire amount of any judgment which accrues after the entry of judgment and before the Company has paid or tendered or deposited into court that part of the judgment which does not exceed the applicable Limit of Liability as stated in the Declarations;

    d. Premiums on appeal bonds required in any suit and premiums on bonds to release attachments in any suit for an amount not in excess of the Each Claim Limit of Liability as stated in the Declarations or the remaining Aggregate Limit of Liability as stated in the Declarations. The Company shall not be obligated to furnish any such bonds; and

    e. Reasonable and necessary expenses, other than loss of earnings, incurred by the "insured" at the Company's request in the investigation or litigation of any "claim".

    "Claim expenses" shall not include the cost of investigation and adjustment of "claims" by employees or fee adjusters of the Company or the cost of the Company's overhead.

    The determination by the Company as to the reasonableness of and necessity for "claim expenses" shall be conclusive.

3. "Damages" means a monetary judgment, final arbitration award, or settlement but does not include:

    a. Any fine, sanction, penalty, or punitive or exemplary "damages";

    b. Restitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an "insured" for "professional services";

    c. Matters deemed uninsurable by law; or

    d. Any "damages" which are a multiple of compensatory "damages" awarded against the "insured", including without limitation an award of double or treble "damages".

4. "Extended reporting period" means a period of time as stated in subsection **G.**, EXTENDED REPORTING PERIOD (SECTION I: INSURING AGREEMENT AND CLAIMS MADE CLAUSE), immediately following the effective date of termination, cancellation, or nonrenewal of this policy in which "claims" may be reported to the Company under this Coverage Form, provided that such "claims" are made against the "insured" and reported in writing to the Company during such "extended reporting period" and are the result of an act, error, omission, or "personal injury" which occurred prior to the end of the "policy period" and subsequent to the "retroactive date" and otherwise are covered under this Coverage Form.

5. "Insured" means:

    a. The "named insured" and any "predecessor firm(s)";

b. Any lawyer who:

   (1) Was a principal, shareholder, partner, shareholder of a partner, member, officer, director, or employee of any "predecessor firm(s)";

   (2) Who was, is, or becomes a principal, shareholder, partner, shareholder of a partner, member, officer, director, or employee of the "named insured",

   but solely while such lawyer is/was acting within the scope of his or her duties on behalf of the "named insured" or "predecessor firm(s)";

c. Any heir, executor, administrator, assignee, or legal representative of an "insured" in the event of that "insured's" death, incapacity, or bankruptcy but only to the extent that the "insured" would otherwise be provided coverage under this Coverage Form;

d. Any person or professional corporation designated *of counsel* to the "named insured" or any "predecessor firm", but solely while such person or professional corporation is/was acting within the scope of his or her duties on behalf of the "named insured" or "predecessor firm(s)";

e. Any non-lawyer who was an employee of any "predecessor firm(s)" or who was, is, or becomes an employee of the "named insured", but solely while such employee is/was acting within the scope of his or her duties as an employee of the "named insured" or "predecessor firm(s)".

6. "Named insured" means the individual or entity designated in the Declarations.

7. "Personal injury" means:

   a. False arrest, detention, or imprisonment;

   b. Malicious prosecution or abuse of process;

   c. The wrongful eviction from, wrongful entry into or other invasion of the right of private occupancy; or

   d. The publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or utterance in violation of an individual's right of privacy.

8. "Policy period" means the period from the effective date of this Coverage Form to the expiration date as set forth in the Declarations or to an earlier termination date, if any, of this policy.

9. "Pollutants" means any solid, liquid, gaseous, thermal or electromagnetic irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   "Pollutants" does not mean heat, smoke, vapor, soot or fumes from a "hostile fire". "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

10. "Predecessor firm" means any lawyer, law firm, or professional legal corporation engaged in the practice of law to whose financial assets and liabilities the "named insured" is the majority successor in interest.

11. "Professional services" means services rendered for others by an "insured" as an attorney.

    "Professional services" include services rendered for others by an "insured" as a notary public, administrator, conservator, executor, guardian, guardian ad litem, title insurance agent, arbitrator, mediator, trustee, or in any similar fiduciary capacity, provided that such services are connected with and incidental to the "insured's" profession as an attorney and are/were performed by or on behalf of the "named insured" or "predecessor firm(s)".

12. "Retroactive date" means the date specified in the Declarations, or in any endorsement attached to this Coverage Form, on or after which an act, error, omission, or "personal injury" must have occurred in order for any "claim" or any notification given to the Company pursuant to SECTION I: INSURING AGREEMENT AND CLAIMS MADE CLAUSE, subsection **F.**, AWARENESS PROVISIONS, arising from such act, error, omission, or "personal injury" to be covered under this Coverage Form.

13. "Totally and permanently disabled" means that the "insured" has become so incapacitated as to be wholly prevented from rendering "professional services", provided that such disability:

    a. Has existed continuously for not less than six months;

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

b. Is expected to be continuous and permanent; and

c. Is certified by a medical doctor.

"Totally and permanently disabled" shall not include any condition which:

(1) Is a result of war or acts of war, whether or not declared;

(2) Occurred during active service in the armed forces of any country; or

(3) Results from:

(a) Intentionally self-inflicted injuries;

(b) Attempted suicide, whether or not the "insured" is sane; or

(c) The abuse or misuse of addictive or non-addictive chemical compounds or alcohol.

## C. DEFENSE AND SETTLEMENT

1. The Company, subject to all terms and conditions of the Coverage Form, shall appoint counsel of its choice to defend any suit against the "insured" seeking "damages" which are payable under the terms and conditions of this Coverage Form, even if any of the allegations of the suit are groundless, false, or fraudulent. Other than suits for "damages" as set forth above, the Company at its sole option shall have the right, but not the obligation, to appoint counsel to defend any suit or other proceeding.

2. The Company shall not settle a "claim" without the consent of the "named insured", but such consent shall not be unreasonably withheld. If, however, an "insured" shall refuse to consent to a settlement recommended by the Company and acceptable to the claimant and the insured elects to pursue the defense of such "claim" or continue proceedings in connection with the "claim", then the Company's liability for "damages" and "claim expenses" relating to that "claim" shall not exceed the total amount for "damages" and "claim expenses" which the Company would have paid up to the date of the "insured's" refusal.

Bankruptcy, insolvency, or dissolution of the "insured" or of the "insured's" estate shall not relieve the Company or the "insured" of any of its obligations. In the event of the bankruptcy, insolvency, or dissolution of the "named insured", the Company shall have, at its sole option, the right to settle any "claim" without obtaining the consent of the "insured".

The Company shall not be obligated to pay "damages" or "claim expenses" or defend or continue to defend any "claim" after the applicable Limit of Liability has been exhausted by payment of "damages" or "claim expenses" or a combination of both.

## D. LIMITS OF LIABILITY AND DEDUCTIBLE

1. Each Claim Limit of Liability

Subject to the Aggregate Limit of Liability, the Company's liability for "damages" and "claim expenses" for each "claim" made against the "insured" during the "policy period" and any "extended reporting period" shall not exceed the amount stated as the Each Claim Limit in the Declarations, inclusive of the deductible.

2. Aggregate Limit of Liability

Subject to the Each Claim Limit of Liability, the Company's liability for "damages" and "claim expenses" for the aggregate of all "claims" made against the "insured" during the "policy period" and any "extended reporting period" shall not exceed the amount stated as the Aggregate Limit in the Declarations, inclusive of the deductible.

3. Deductible - Each and Every Claim

The "insured" shall bear, at its own risk and uninsured, the sum stated in the Declarations as the Deductible – Each and Every Claim, for "claims" made against the "insured" during the "policy period" or any "extended reporting period". The deductible shall apply to all "damages" and "claim expenses".

The Company shall be liable only for the difference between the deductible amount and the applicable Limit of Liability of this Coverage Form.

The Company may pay any part or all of the deductible amount in the investigation and settlement of any "claim", and upon notification of the action taken, the "insured" shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

4. Multiple Insureds, Claims or Claimants

The inclusion herein of more than one "insured" or the making of "claims" by more than one person or organization shall not operate to increase the Company's Limits of Liability. "Claims" arising out of a single act, error, omission, or "personal injury" or a series of related acts, errors, omissions, or "personal injuries" shall be treated as a

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

single "claim" and shall be considered first made during the "policy period" or "extended reporting period" in which the earliest such "claim" was made and reported. All related "claims" shall be subject to the same Limit of Liability.

If more than one Limit of Liability or Limit of Insurance under this policy and any Coverage Parts or endorsements attached thereto applies to any "claim", the most we will pay on behalf of the "insured" is the single highest limit of all coverages applicable to such "claim".

**E. TERRITORY**

The coverage afforded by this Coverage Form applies to acts, errors, omissions, or "personal injury" occurring anywhere in the world, provided that the "claim" is made or the suit is instituted against the "insured" within the United States of America, its territories or possessions, or Canada.

The Company, however, may elect at any time to investigate, settle, or defend "claims" brought anywhere other than in the United States of America, its territories or possessions, or Canada.

**F. AWARENESS PROVISIONS**

If during the "policy period" the "insured":

1. Becomes aware of an act, error, omission, "personal injury", or circumstance which may give rise to a "claim" to which this Coverage Form applies; and

2. Notifies the Company in writing of such act, error, omission, "personal injury", or circumstance in accordance with SECTION III: CONDITIONS - CLAIMS;

then any "claim" that is subsequently made against the "insured" that arises out of such act, error, omission, "personal injury", or circumstance will be deemed to have been made during the "policy period", regardless of when such "claim" is actually made.

**G. EXTENDED REPORTING PERIOD**

1. Coverage

If the policy which includes this Coverage Form is cancelled or non-renewed, the "named insured" may purchase an Extended Reporting Period Endorsement. Such endorsement, when issued, extends the period of time during which the "insured" may report "claims" to the Company. Such endorsement applies only to "claims" first made against the "insured" and reported to the Company during such "extended reporting period" and arising out of an act,

error, omission or "personal injury" which took place on or after the Retroactive Date shown in the Declarations and prior to the end of the "policy period", and was otherwise covered under this Coverage Form.

The "extended reporting period", including those described under paragraph **4.**, Retirement, and paragraph **5.**, Death or Disability, does not:

a. Extend the "policy period";

b. Increase any applicable Limit of Liability; or

c. Otherwise change any of the provisions of this Coverage Form.

2. Eligibility

The following conditions must be met before this option may be exercised:

a. This policy was cancelled or non-renewed for reasons other than the "insured's" failure to comply with policy provisions, failure to cooperate with the Company or material misrepresentation of facts, or the nonpayment of the premium or the deductible;

b. The Company must receive written notice of the "named insured's" intent to purchase the option within sixty (60) days after the end of the "policy period";

c. The total additional premium is paid within sixty (60) days of the end of the "policy period"; and

d. The "insured's" license or right to practice law and render "professional services" has not been surrendered involuntarily, or revoked, suspended by, or surrendered at the request of any regulatory or judicial authority.

3. Terms

a. The terms available for the Extended Reporting Period Endorsement will be:

(1) One year;

(2) Two years;

(3) Three years; or

(4) Unlimited.

b. The "extended reporting period" premium will be calculated at:

(1) One hundred fifty percent (150%), for the one year option;

(2) Two hundred percent (200%), for the two year option;

LAWYERS PROFESSIONAL LIABILITY COVERAGE FORM

**(3)** Two hundred fifty percent (250%), for the three year option; or

**(4)** Three hundred fifty percent (350%), for the unlimited option,

of the last annual premium.

**4.** Retirement

**a.** If an "insured", as defined in SECTION **IB.**, DEFINITIONS, **5.a.** or **5.b.**, after being insured for Lawyers' Professional Liability Coverage with a member of the Hartford Financial Services Group of companies for three or more full consecutive years:

**(1)** Retires from the practice of law during the "policy period";

**(2)** Ceases the performance of all "professional services" covered by this Coverage Form; and

**(3)** Is fifty-five (55) years of age or older,

he or she will be entitled, at no additional premium, to an unlimited Extended Reporting Period Endorsement. This endorsement will not go into effect unless the "insured" has notified the Company, in writing, of their retirement within sixty (60) days of the end of the "policy period".

**b.** If an "insured", as defined in SECTION **IB.**, DEFINITIONS, **5.a.** or **5.b.**, after being insured for Lawyers' Professional Liability Coverage with a member of the Hartford Financial Services Group of companies for less than three consecutive years:

**(1)** Retires from the practice of law during the "policy period";

**(2)** Ceases the performance of all "professional services" covered by this Coverage Form; and

**(3)** Is fifty-five (55) years of age or older,

he or she will be entitled to an unlimited Extended Reporting Period Endorsement.

An additional premium payment is required to place the unlimited Extended Reporting Period Endorsement into effect. The premium for this unlimited "extended reporting period" will be calculated at three hundred fifty percent (350%) of the portion of the last annual

premium allocated to the retired "insured".

**5.** Death or Disability

If an "insured", as defined in SECTION **IB.**, DEFINITIONS, **5.a.** or **5.b.**, after being insured for Lawyers' Professional Liability Coverage with a member of the Hartford Financial Services Group of companies for three or more full consecutive years:

**a.** Dies from a cause other than suicide; or

**b.** Becomes "totally and permanently disabled" during the "policy period",

he or she will be entitled, at no additional premium, to an unlimited Extended Reporting Period Endorsement.

To be eligible, the Company must be notified of the disability within sixty (60) days of the end of the "policy period" and the "insured" must be under the care of a duly licensed physician for such disability. The "insured" agrees to submit to medical examination(s) by any physician(s) designated by the Company, if requested.

**6.** Deductible and Limits of Liability

**a.** The deductible, as set forth in the Declarations, will apply to each and every "claim" made during any "extended reporting period" and shall apply to all "damages" and "claim expenses".

**b.** The Company's Limits of Liability, as set forth in the Declarations, shall not be increased by reason of any "extended reporting period", and shall continue to be inclusive of "damages" and "claim expenses". The issuance of any "extended reporting period" shall not in any way increase the Limits of Liability of this Coverage Form.

## SECTION II: EXCLUSIONS

### A. THIS INSURANCE DOES NOT APPLY TO:

**1.** "Claim(s)" arising out of an act, error, omission, or "personal injury" committed by the "insured" or at the "insured's" direction with actual dishonest, fraudulent, criminal, or malicious purpose or intent; however, this exclusion shall not apply to "insured(s)" who did not commit or personally participate in such act, error, omission, or "personal injury";

2. "Claim(s)" by or against or in connection with any entity other than the "named insured" or "predecessor firm(s)" in which an "insured" or any member of the immediate family of an "insured" has an ownership interest or control in excess of ten percent (10%), whether such ownership interest or control is financial or otherwise;

3. "Claim(s)" arising out of liability of others assumed by the "insured" under any contract or agreement;

4. "Claim(s)" arising out of bodily injury, sickness, disease, or death of any person or injury to or destruction of any tangible property including the loss of use thereof. Bodily injury shall not include emotional distress;

5. Any "claim" arising out of:

   a. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants";

   b. Any governmental or regulatory notification that any "insured" is a potentially responsible party for liability arising out of "pollutants"; or

   c. Any loss, cost or expense arising out of any:

      (1) Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

      (2) Claim or suit by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

6. "Claim(s)" arising out of asbestos, including but not limited to:

   a. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos;

   b. The use of asbestos in constructing or manufacturing any goods, products or structures;

   c. The removal of asbestos from any goods, products or structures; or

   d. The manufacture, encapsulation, transportation, storage, handling, distribution, sale, application, mining, consumption or disposal of asbestos or goods or products containing asbestos;

7. "Claim(s)" by an "insured" against another "insured";

8. "Claim(s)" against an "insured" as the beneficiary or distributee of any trust or estate;

9. "Claim(s)" arising out of advice given by any "insured" to purchase or sell or to offer to purchase or sell any security or to make any investment of any kind or to refrain from doing any of the foregoing;

10. "Claim(s)" arising out of the "insured's" service and/or capacity as:

    a. An officer, director, partner, trustee, principal, stockholder, or employee of any entity other than the "named insured" or "predecessor firm(s)"; or

    b. A fiduciary under the Employee Retirement Income Security Act of 1974 as amended or any regulation or order issued pursuant thereto;

11. "Claim(s)" arising from violation of statutes, regulations, administrative orders, rulings, or the common law pertaining to discrimination based upon age, race, color, creed, national origin, sex, religious affiliation, physical or mental handicap or disease, and/or sexual preference;

12. "Claim(s)" arising from any ancillary, related, or independent business activities of the "insured" not related to the practice of law as governed by the applicable Rules of Professional Conduct where the "named insured" is located;

13. "Claims" arising from defects in title of which the "named insured" had knowledge at the date of issuance of such title insurance; or

14. Any "claim" based upon or arising out of breach of underwriting authority by the "insured" in his/her capacity as a title insurance agent.

B. **WAIVER OF EXCLUSIONS AND BREACH OF CONDITIONS**

Whenever coverage under any provision of this Coverage Form would be excluded, suspended, or forfeited: