# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRED MOORE, *an individual*, HELEN OGAR, *an individual*, KEVIN JACOBS, *an individual*, BETTY POTASNAK, *an individual*, VICKI COOK MUHS, *an individual*, PK MANAGEMENT CO. INC., *an Illinois corporation*, LAWRENCE MOORE & OGAR, *successor in interest to Lawrence Moore Ogar & Jacobs*, )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>LAWRENCE MOORE & OGAR, *successor in interest to Lawrence Moore Ogar & Jacobs*, FRED MOORE, *an individual*, HELEN OGAR, *an individual*, KEVIN JACOBS, *an individual*, )<br>)<br>Third-Party Plaintiffs, )<br>)<br>v. )<br>)<br>TARA CONKLIN, SNYDER & SNYDER AGENCY, INC., )<br>)<br>Third-Party Defendants. ) | Case No. 08-cv-1350 |

## O R D E R  &  O P I N I O N

Before the Court are the Motion to Dismiss the Third-Party Complaint by Third-Party Defendants Tara Conklin and Snyder & Snyder Agency, Inc. (Doc. 19)

and the Motion for Leave to File Supplemental Response to Third-Party Defendants' Motion to Dismiss by Third-Party Plaintiffs Lawrence Moore & Ogar, Fred Moore, Helen Ogar, and Kevin Jacobs (Doc. 35). Also ripe for decision are two Motions to Strike and Dismiss Defendants' Affirmative Defense and Counterclaim by Plaintiff, Hartford Casualty Company (Docs. 37 & 42).

## BACKGROUND[1]

From January 1, 2005 to November 1, 2008, Lawrence, Moore, Ogar & Jacobs ("LMOJ"),[2] was a partnership of attorneys in Bloomington, Illinois. Hartford Casualty Company ("Hartford") issued a liability insurance policy to the Firm, effective December 21, 2007 to December 21, 2008, and retroactive to December 21, 2006 ("policy"). On March 17, 2008, Betty L. Potasnak, Vicki Cook Muhs, and PK Management Co., Inc. ("Potasnak plaintiffs") filed suit against LMOJ and its partners, Fred Moore, Helen Ogar, and Kevin Jacobs (LMOJ and its partners collectively referred to as the "LMOJ parties") in the Seventh Judicial Circuit of Sanagmon County, Illinois, alleging that Jacobs and LMOJ had failed to properly

---

[1] These facts, which appear at this point to be undisputed, are drawn from Hartford's Amended Complaint (Doc. 25) and the Firm's and its partners' Third-Party Complaint (Doc. 8). The Court expresses no opinion as to the truth of these facts.

[2] As noted by Magistrate Judge Gorman in a February 10, 2009 text-only entry, the law firm Lawrence, Moore & Ogar is the successor in interest to the law firm of Lawrence, Moore, Ogar & Jacobs, which existed during the dates relevant to this dispute. (Doc. 8 at 2). Lawrence, Moore & Ogar was created on November 1, 2008. (Doc. 8 at 2). The caption was amended to reflect this distinction. Therefore, the Court will refer to Lawrence, Moore & Ogar and Lawrence, Moore, Ogar & Jacobs as "LMOJ," as that was the name of the firm during the time periods relevant to this suit.

2

prosecute three appeals on behalf of the Potasnak plaintiffs.[3] On April 11, 2008, the LMOJ parties tendered their defense in the Potasnak suit to Hartford, and, on May 15, 2008, Hartford denied defense and indemnity.

Hartford filed its Complaint for Declaratory Judgment in this Court on December 1, 2008; it amended its Complaint on April 24, 2009. (Docs. 1 & 25). Plaintiff sought a declaration that it had no duty to defend or indemnify the LMOJ parties in the Potasnak suit. Hartford alleges that it has no duty to defend or indemnify the LMOJ parties (1) because the conduct of which the Potasnak plaintiffs complained occurred prior to the policy's retroactive date, (2) because the LMOJ parties knew or could have foreseen, as of the policy's effective date, that the conduct of which the Potasnak plaintiffs complained could result in the basis of a claim, and (3) because the LMOJ parties made misrepresentations in its application to Hartford by failing to disclose the facts out of which the Potasnak suit arose.[4]

On February 9, 2009, the LMOJ parties filed a Third-Party Complaint against Snyder & Snyder Agency, Inc., the insurance broker through which LMOJ obtained the Hartford policy, and Tara Conklin, an account executive at the Agency (collectively referred to as the "Snyder parties"). (Doc. 8). The Third-Party Complaint alleges that the Snyder parties were negligent in obtaining insurance

---

[3]   A copy of the Potasnak complaint was attached to Hartford's original Complaint. (Doc. 1-4 at 29-33). The LMOJ parties deny that the Potasnak plaintiffs alleged a failure to properly prosecute the appeals, but admit that the suit was filed. The LMOJ parties do not indicate what their characterization of the suit would be, and the Court, having read the Potasnak complaint, believes that Hartford's was an accurate characterization.

[4]   For this last count, Hartford contends that the policy should be rescinded, as this alleged failure to disclose voids the coverage under Section IV(D) of the Hartford policy General Conditions and 215 ILCS 5/514.

3

coverage for the LMOJ parties, and seeks damages in the amount of $980,000. The LMOJ parties assert that the Snyder parties, though informed by LMOJ that the policy needed to cover the period of time during which LMOJ was in existence and during which the partners were licensed to practice law, failed to ensure that the policy would cover those time periods and misrepresented the coverage of the policy to the LMOJ parties. On April 1, 2009, the Snyder parties filed a Motion to Dismiss the Third-Party Complaint, alleging that the claim is not ripe for adjudication, and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 19). In addition, the Snyder parties argue that the court should exercise its discretion to disallow impleader under Federal Rule of Civil Procedure 14(a)(1) because the facts underlying the Third-Party Complaint and Hartford's Complaint do not involve the same transaction or facts, and inclusion of the Third-Party Complaint would overly complicate the litigation.

The LMOJ parties filed an alternative Affirmative Defense to Hartford's Complaint on May 22, 2009, alleging that the Snyder parties, acting as agents of Hartford, obtained a policy that did not meet the LMOJ parties' expressed needs but represented that the policy did meet their needs, on which representation the LMOJ parties relied. (Doc. 36). Hartford moved to strike and dismiss the Affirmative Defense on June 4, 2009. (Doc. 37). Hartford argued that the Affirmative Defense was actually a counterclaim for reformation of the policy based on fraudulent misrepresentation, and that the allegations were not specific enough under Federal Rule of Civil Procedure 9(b), which requires averments of fraud or mistake to be pled with particularity. On July 16, 2009, the LMOJ parties filed an

4

alternative Counterclaim against Hartford, alleging that the policy, as issued, is the product of a mutual mistake of fact between the parties, and should be reformed. (Doc. 40). Hartford filed a Motion to Strike and Dismiss on July 27, 2009, in which it argued that the Counterclaim failed the specificity requirements of Rule 9(b). (Doc. 42).

## JURISDICTION

Jurisdiction for Hartford's suit is based in diversity jurisdiction under 28 U.S.C. § 1332. Hartford alleges, and the Defendants admit, that each of the Defendants is a citizen of Illinois. (Doc. 25). In addition, Hartford alleges, and Defendants admit, that the amount in controversy exceeds $75,000, exclusive of interest and costs.

A corporation is a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332. In its original Complaint, Hartford alleged that it was "formed under the laws of the State of Connecticut," but did not allege a principal place of business. (Doc. 1 at 2). On April 16, 2009, Magistrate Judge Gorman held a Rule 16 Scheduling Conference, at which the parties discussed Hartford's principal place of business. Judge Gorman ordered Hartford to file an Amended Complaint within fourteen days addressing the jurisdictional issue. (4/16/09 Minute Entry). Hartford filed its Amended Complaint on April 24, 2009, in which it alleged that it "is principally located in Connecticut." (Doc. 25 at 2). This was also an insufficient jurisdictional allegation under 28 U.S.C. § 1332, as it failed to allege Hartford's entity type and its principal place of business; Magistrate Judge Gorman ordered Hartford to correct this by a

5

Supplemental Jurisdictional Statement. (12/30/09 Text Order). On January 13, 2010, Hartford filed its Supplemental Jurisdictional Statement, which states that Hartford is an Indiana corporation with its principal place of business in Connecticut. (Doc. 45). Therefore, Hartford is a citizen of Indiana and Connecticut, and § 1332 is satisfied.

**MOTION TO DISMISS THIRD-PARTY COMPLAINT**

In support of their Motion to Dismiss the Third-Party Complaint, the Snyder parties argue that "Third-Party Plaintiffs' claims contain single or multiple contingencies which do not hinge upon the same operable facts as the claims against the Third-Party Defendants," and that the Third-Party claim is thus not ripe for adjudication.[5] (Doc. 20 at 3). These contingencies include the outcome of the malpractice action in the Circuit Court and the "viability of the coverage position asserted by Hartford." (Doc. 20 at 3). Therefore, the Snyder parties argue, the Court should dismiss the Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(1). In addition, they argue that the Court should deny impleader under Federal Rule of Civil Procedure 14(a) because the addition of these "contingent" claims would unduly delay and complicate this suit. The Rule 14 argument is addressed first.

---

[5] The Snyder parties claim that the Third-Party Complaint is a declaratory judgment action, because the preamble requests a "determination that Third-Party Defendants were negligent." (Doc. 20 at 3). The Court, reading the entire Third-Party Complaint, does not agree with this characterization. The LMOJ parties allege that the Snyder parties were negligent, and allege several types of damages: loss of insurance coverage for the Potasnak suit, attorneys' fees for the Potasnak suit, lack of insurance coverage for the period prior to December 21, 2006, and the inability to obtain legal malpractice insurance for that period; they request $980,000 in damages. This is not merely a declaratory judgment action.

Federal Rule of Civil Procedure 14(a) provides that a defendant "may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Whether to allow a third-party complaint is left to the district judge's discretion, but "[a]s long as a third-party action falls within the general contours limned by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice, a district court should not preclude its prosecution." Marseilles Hydro Power, LLC v. Marseilles Land and Water Co., 299 F.3d 643, 650 (7th Cir. 2002) (quoting Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 395 (1st Cir.1999)). "A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim." 6 FED. PRAC. & PROC. CIV. § 1446 (2d ed.). "Impleader should be 'construed liberally to reduce multiplicity of litigation and promote judicial efficiency.'" EBI Holdings, Inc., EBI, L.P. v. Butler, 07-3259, 2009 WL 1939790, *3 (C.D. Ill. Jul. 2, 2009) (quoting National Council on Compensation Ins., Inc. v. American Intern. Group, 07-c-2898, 2009 WL 466802, *13 (N.D. Ill. Feb. 23, 2009)).

The LMOJ parties point out that neither they nor the Snyder parties have found a Seventh Circuit case addressing whether a defendant to an insurance declaratory-judgment suit may implead the insurance broker. However, the LMOJ parties have cited a case from the Southern District of New York that directly addresses this situation. Old Republic Ins. Co. v. Concast, Inc., 99 F.R.D. 566 (S.D. N.Y. 1983). In Old Republic, an insurer brought a declaratory judgment action seeking a determination that it was not required to cover a subcontractor of the

defendant under its policy with the defendant.  The defendant impleaded the insurance broker,[6] alleging that the broker would be responsible for any liability the defendant or subcontractor would incur as a result of a finding that the insurer did not have to provide coverage.  The court allowed the impleader of the insurance broker under Rule 14(a).

As the Old Republic court pointed out, a strict interpretation of Rule 14(a) makes it impossible for defendants to declaratory judgment actions to maintain a third-party complaint, as the defendant to a declaratory judgment action will never be found liable to the plaintiff.  Instead, the court looked to the purpose of Rule 14(a), which is to "facilitate judicial economy by avoiding multiple and circuitous suits," and found that it "should not be defeated by a narrow or technical interpretation of the Rule's requirements."  Id. at 568.  It also examined a Fifth Circuit decision in which a defendant to an insurer's declaratory-judgment suit impleaded the primary insurer, who the defendant alleged should have provided proper notice to the plaintiff insurer.  American Fidelity & Casualty Co. v. Greyhound Corp., 232 F.2d 89 (5th Cir. 1956).  The court there held that the claims were closely-enough related to permit impleader.  The acceptable degree of disparity between the facts of the two claims "depended upon whether the advantages gained by joining the third-party defendant outweighed any prejudice which the impleaded party might suffer."  Old Republic, 99 F.R.D. at 569 (citing American Fidelity, 232 F.2d at 92).

---

[6]  The court did not specifically describe the third-party defendant as a "broker," but it appears that it was, as the company had been instructed by the defendant to obtain insurance for the subcontractor from the insurer.

The Old Republic court found that its

> decision regarding the contract issue of whether [the insurer's] insurance policy covers [the subcontractor] will certainly require evidence regarding negotiations between [the insurer] and [the broker]. That evidence forms a core of facts that plays a significant role in the resolution of both the main claim and the third-party complaint. [The broker's] testimony will be vital to the case and it would be wastefully duplicative to require [defendant and its subcontractor] to proceed against it in a separate case. Moreover, impleader not only saves the time and expense of reduplication of evidence, it increases the likelihood that consistent results may be obtained from similar or identical evidence.

99 F.R.D. at 569. Likewise, here a decision on whether the policy covered or should have covered the time period prior to December 21, 2006 will require evidence of the interactions between the Snyder parties and Hartford, as well as between the LMOJ parties and the Snyder parties. These communications form a core of facts that will be significant to the resolution of both claims. This same evidence would be at issue in both Hartford's instant suit and in a separate suit by the LMOJ parties against the Snyder parties for negligence in procuring the insurance policy.

Further, as the LMOJ parties point out in their supplemental response,[7] there is a risk of inconsistent judgments if these two claims proceed as separate

---

[7] On May 22, 2009, the LMOJ parties filed a Motion for Leave to File Supplemental Response to Third-Party Defendants' Motion to Dismiss, filing their proposed Supplemental Response with the Motion. (Docs. 33 & 35). The LMOJ parties assert that a supplemental response is necessary because the Court should consider the possibility of inconsistent verdicts as to the agency relationship between Hartford and Conklin and the Firm. The combined length of the Response and the Supplemental Response is less than the 15-page limit of Local Rule 7.1(B)(4). In addition, Conklin, the Agency, and the Potasnak plaintiffs do not object to the supplemental response, and Hartford objects only to the extent that it raises issues directed to it, to which it will not have an opportunity to respond. The Court, in its discretion, will allow the supplemental response (Doc. 33), and finds that the supplemental response does not require a response from Hartford at this this time.

suits. The relationships between the Snyder parties, Hartford, and the LMOJ parties will likely be an important issue in both claims -- specifically, whether the Snyder parties acted as Hartford's agents, or as LMOJ's agents in procuring the policy for LMOJ from Hartford. If they acted as Hartford's agents, then Hartford might be held liable under Illinois agency law for their alleged negligence in procuring the policy; if they acted as the LMOJ parties' agents, then they might be held liable to the LMOJ parties for damages incurred because of their alleged negligence.

The Snyder parties also argue that the claims of the Third-Party Complaint are not yet ripe for adjudication, and therefore must be dismissed under Rule 12(b)(1). They identify two "contingencies" that allegedly render the claims unripe: the outcome of the malpractice action in Illinois state court and the "viability of the coverage position asserted by Hartford." (Doc. 20 at 3). It is true that even Rule 14(a) claims must be ripe in order for a court to have jurisdiction to hear them. However, neither of these "contingencies" is fatal to the Third-Party Complaint.

First, the outcome of the state-court malpractice action would merely affect the amount of damages the Court could award to the LMOJ parties; whether they are liable for negligence to the LMOJ parties can be determined without reference to the malpractice suit. If the allegations of the Third-Party Complaint are true, then the LMOJ parties have already incurred damages as a result of the Snyder parties' alleged negligence, even if the state-court malpractice action is decided in the LMOJ parties' favor. The LMOJ parties claim damages as a result of the Snyder parties' alleged negligence, which are not contingent on the outcome of the

malpractice action: attorneys' fees for the Potasnak suit, lack of insurance coverage for the period prior to December 21, 2006, and the inability to obtain legal malpractice insurance for that period. These alleged damages would exist even if the LMOJ parties prevail in the malpractice action, as that action will only determine whether malpractice was committed. Only the damages allegedly arising from the loss of insurance coverage for the Potasnak suit, which the Court takes to include the amount of a judgment against the LMOJ parties in the malpractice action, are dependent on the outcome of the malpractice action. If it determines that the Snyder parties are liable to the LMOJ parties, the Court can enter a conditional award of damages if the result of the state-court action is still unknown at the time that the federal case ends.[8] Williams v. Ford Motor Credit Co., 627 F.2d 158, 160 (8th Cir. 1980).

Second, the "viability of the coverage position asserted by Hartford" is precisely the issue to be determined under Hartford's claim in this case. It is, at the moment, "contingent," in that it is unknown, but Rule 14(a), by its "is or may be liable" language, permits the impleader of a party whose liability is dependent on the outcome of the main claim. See 6 FED. PRAC. & PROC. CIV. § 1446 (2d ed.). Here, the outcome of the claims in the Third-Party Complaint is dependent on the outcome of Hartford's suit for declaratory judgment. If the LMOJ parties prevail on

---

[8] The Court agrees with the LMOJ parties that such a conditional judgment is unlikely to be necessary, as it appears that summary judgment motions in the state-court action were fully briefed by June 12, 2009. (Doc. 24 at 4). This matter is set for the filing of dispositive motions on February 28, 2011, and for trial on June 20, 2011. (4/16/09 Minute Entry). It seems that the state-court matter will be decided by the time this Court would have to determine the amount of damages.

Hartford's claim, and the Court determines that Hartford has a duty to defend and indemnify them in the Potasnak suit, then it appears that Hartford, not the Snyder defendants, would be compelled to cover the costs of the LMOJ's involvement in the Potasnak suit, and that the damages relating to lack of insurance coverage for the period prior to December 21, 2006 and the inability to obtain legal malpractice insurance for that period would no longer exist.[9]

Prejudice to the third-party defendant is also a consideration in whether to allow impleader under Rule 14(a).

> The relevant reference point in determining prejudice is not the relative resources that the [third-party defendants] will expend in defending, as opposed to not defending, the third-party action. Rather, prejudice to a third-party defendant must be measured by whether the third-party defendant will incur greater expense or be at greater disadvantage in defending a third-party suit than in defending a separate action brought against it.

Trustees of Cent. States, Southeast and Southwest Areas Health and Welfare Fund v. State Farm Mut. Auto. Ins. Co., 89-c-0435, 1991 WL 191456, *3 (N.D. Ill. Sept. 16, 1991) (quoting U.S. v. New Castle County, 111 F.R.D. 628, 633 (D. Del. 1986)). Here, as the Court discussed above, the conduct of the Snyder parties and their relationship to Hartford and to the LMOJ parties is already at issue in this case, and there is no showing that they will incur greater expenses or be at greater disadvantage if they must defend the third-party suit rather than a separate action;

---

[9] As with the other discussions throughout this Opinion & Order of what will likely happen with this case in future proceedings, the Court is not bound by its current expectations of what will happen or of the legal consequences of its future findings. At this stage, in deciding whether to dismiss the Rule 14(a) Third-Party Complaint, it is necessary to anticipate the likely events of the case, though the time has not yet come for making final determinations as to these issues.

in fact, it appears that, since they will probably have to be deposed in the Hartford suit anyway, their inconvenience will be reduced.

Though neither party has mentioned it, the Court must assure itself of its subject-matter jurisdiction over the Third-Party Complaint. Federal Rule of Civil Procedure 14 does not provide an independent basis for jurisdiction, and the Third-Party Complaint alleges state-law negligence, not a federal question. Likewise, there is no diversity of citizenship, as the Firm, its partners, the Agency, and Conklin all are citizens of Illinois. Therefore, subject-matter jurisdiction must be based on supplemental jurisdiction under 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy….Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."[10]

In order for the two claims to form part of the same case or controversy, they must "derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient." Sanchez & Daniels v. Koresko, 503 F.3d 610, 614 (7th Cir. 2007) (quoting Baer v. First Options of Chicago, Inc., 72 F.3d

---

[10] 28 U.S.C. § 1367(b) does not preclude jurisdiction over this matter. § 1367(b) provides that "In any civil action of which the district courts have original jurisdiction founded solely on [diversity jurisdiction], the district courts shall not have supplemental jurisdiction…over claims *by plaintiffs* against persons made parties under Rule 14…when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of [diversity jurisdiction]." (emphasis added). Here, the third-party claim is made by the original defendant, not the original plaintiff, so the fact that there is no diversity between the parties to the third-party action does not destroy jurisdiction.

13

1294, 1299 (7th Cir.1995)) (internal quotation marks omitted). Here, just as the Court has found the two actions to be related enough to justify impleader, the Court also finds that there is more than a "loose factual connection" between the two actions such that supplemental jurisdiction over the third-party complaint is proper. For the foregoing reasons, the Motion to Dismiss the Third-Party Complaint (Doc. 19) is denied.

### MOTION TO STRIKE AND DISMISS AFFIRMATIVE DEFENSE

Hartford moved to strike and dismiss the LMOJ parties' affirmative defense, alleging that it is in reality a counterclaim for reformation of the policy on the grounds of fraudulent misrepresentation, and that it fails the requirement of Federal Rule of Civil Procedure 9(b) that such claims be pled with particularity. (Doc. 37). Rather than contesting the Motion to Strike and Dismiss, the LMOJ parties state that Hartford's assertions are "well-taken," and request fourteen days in which to file an amended affirmative defense or counterclaim. (Doc. 39). The LMOJ parties assert that Hartford has no objection to this request. Therefore, the Court grants the Motion to Strike and Dismiss the Affirmative Defense (Doc. 35), and allows the LMOJ parties fourteen days from the date of this order in which to file an amended affirmative defense or counterclaim, if necessary.[11]

---

[11] It may be that the LMOJ parties' Counterclaim, filed July 6, 2009, and discussed below, was filed because of the Court's delay in ruling on the Motion to Strike and Dismiss the affirmative defense, and that it is the amended pleading that the LMOJ parties sought to file. If so, there is no need for the LMOJ parties to submit an amended affirmative defense or counterclaim within fourteen days.

# MOTION TO STRIKE AND DISMISS COUNTERCLAIM

After the LMOJ parties filed their Counterclaim requesting that the Court reform the insurance contract on the basis of a mutual mistake, Hartford moved to strike and dismiss it on the basis that it failed to meet the pleading requirements of Federal Rule of Civil Procedure 9(b).[12] (Doc. 42) Hartford claims that the Counterclaim contains "no reference as to a specific representation made, when it was made, where it was made, how and to whom it was transmitted, nor is there anything but a conclusory allegation of agency."

Rule 9(b) provides that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." The "circumstances" include "the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). Though allegations of mistake are within the Rule, the Seventh Circuit has expressed doubt as to whether mistake need be pled with the same particularity as fraud, as allegations of mistake do not raise the same concerns as those present with allgations of fraud. Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992).[13] The court noted that claims alleging mistake are only very

---

[12] It should be noted that the Counterclaim is pled in the alternative. (Doc. 40). Therefore, it appears that its allegation that "The insurance policy, as issued, does not provide coverage for acts occurring prior to December 21, 2006," is not intended to replace or contradict the LMOJ parties' denial of Hartford's allegation that it has no duty to defend or indemnify the LMOJ parties under the policy because the alleged wrongful acts occurred prior to December 21, 2006. (Doc. 6 at 3). FED. R. CIV. PRO. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")

[13] The Circuit Court explained:

rarely dismissed because of non-compliance with Rule 9(b). See also 5A FED. PRAC. & PROC. CIV. § 1299 (3d ed.) ("A well-pleaded claim grounded on mistake should include averments of what was intended, what was done, and how the mistake came to be made....[T]he pleading requirement set out in Rule 9(b) is not overly difficult to meet."). In addition, "Rule 9(b) must be read together with the general requirements of Rule 8(a) that plaintiff need only plead a 'short and plain statement' to give notice to the defendant of the nature of his claims....The purpose of Rule 9(b) is to give the defendant slightly more notice than under Rule 8." G.T. Laboratories, Inc. v. Cooper Companies, Inc., 92-c-6647, 1994 WL 274982, *2 (N.D. Ill. June 17, 1994) (citing Tomera v. Galt, 511 F.2d 504, 508 (7th Cir. 1975); Reshall Assoc., Inc. v. Long Grove Trading Co., 754 F.Supp. 1226, 1230 (N.D. Ill. 1990)).

---

> Rule 9(b) requires that the circumstances constituting an alleged fraud or mistake be pleaded with particularity. This may seem an anomalous requirement in the age of notice pleading and liberal discovery. Jeff Sovern, Reconsidering Federal Civil Rule 9(b): Do We Need Particularized Pleading Requirements in Fraud Cases?, 104 F.R.D. 143 (1985). Most of the reasons given for the rule are indeed makeweights. (See the list in 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1296 (2d ed. 1990).) But it has a germ of sense. Accusations of fraud can do serious damage to the goodwill of a business firm or a professional person. People should be discouraged from tossing such accusations into complaints in order to induce advantageous settlements or for other ulterior purposes. Rule 9(b) does that. Why, if this is the true rationale of Rule 9(b), allegations of mere mistake should have to be particularized is a mystery. However, we have found (though without pretending to have conducted a complete search) only two cases in the last half century in which a complaint was dismissed for failure to allege mistake with adequate particularity. United States v. $3,216.59, 41 F.R.D. 433 (D.S.Car.1967); Reed v. Turner, 2 F.R.D. 12 (E.D.Pa.1941). And we can find neither judicial nor scholarly discussion of the rationale for that aspect of Rule 9(b). So perhaps it is a dead letter, but that is a question for another day.

Bankers Trust Co., 959 F.2d at 682-83.

The LMOJ parties' Counterclaim alleges, upon information and belief, that the Snyder parties were under an agency agreement with Hartford. It further alleges that, after the Snyder parties offered to procure multiple lines of insurance for the LMOJ parties, the LMOJ parties advised the Snyder parties of the nature of their business, of the need for any insurance policy to cover any acts of legal malpractice for the firm since its inception, any acts of legal malpractice occurring since the firm's partners were licensed to practice law, and any acts of malpractice committed by any law firm with which the partners were previously affiliated (this set of requirements will be referred to as the LMOJ parties' stated needs). On December 20, 2006, Hartford, through the Snyder parties, submitted an offer for legal malpractice insurance to the LMOJ parties. The Snyder parties represented to the LMOJ parties that a retroactive date of December 21, 2006 on the Hartford policy would meet the LMOJ parties' stated needs; the LMOJ parties accepted Hartford's offer, and Hartford issued a Lawyers Professional Liability policy for the LMOJ parties. The parties intended, it is alleged, for the policy to meet the LMOJ parties' stated needs, and the fact that the insurance policy, as issued, does not meet these needs because it does not cover acts occurring before December 21, 2006, indicates that a mutual mistake of fact occurred.

In G.T. Laboratories, the Northern District of Illinois found that similarly-detailed allegations were sufficiently particular to survive a Rule 9(b) challenge. 1994 WL 274982, *3. In that case, the counterclaimant alleged that during contract negotiations, the parties agreed on a certain limitations of remedies. However, due to mutual mistake during the November and December 1989 drafting process,

17

provisions that contradicted the agreed limitation of remedies were added to the agreement, and it was later signed on January 1, 1990. Id. at *1. The court held that this was sufficient under Rule 9(b), though only a general time period was alleged, though the counterclaimant failed to identify which particular individuals made the agreement, and though it was not entirely clear how the counterclaimant alleged the mistake to have occurred. Id. at *3 (citing Capalbo v. Paine Webber, Inc., 672 F.Supp. 1048, 1050 (N.D. Ill. 1987); Dunham v. Independence Bank of Chicago, 629 F.Supp. 983, 987 (N.D. Ill. 1986); Trak Microcomputer Corp. v. Wearne Bros., 628 F.Supp. 1089, 1092 (N.D. Ill. 1985).

Likewise, the LMOJ parties' allegations are sufficient to allege mistake under Rule 9(b): they outline the time period of the communications, agreement, and alleged mistake, they identify the people who made the agreement and the mistake, and they have adequately stated the nature of the insurance coverage intended by both parties and how the actual policy differs from that intention. In addition, they allege that the mutual mistake was made because the Snyder parties mistakenly represented to the LMOJ parties that the December 21, 2006 retroactive date would meet their stated needs.

The LMOJ parties' allegation of a mutual mistake in the formation of the insurance contract is based on representations to and from the Snyder parties. Therefore, in order to reform the insurance contract with Hartford, the LMOJ parties must show that the Snyder parties acted as Hartford's agents in obtaining the insurance policy. The LMOJ parties do allege that such an agency relationship existed. The question is whether, in this case, the agency allegation, like the

18

substantive mistake allegation, needs to be pled with particularity. In Lachmund v. ADM Investor Services, the Seventh Circuit held that an agency relationship establishing vicarious liability need only be pled with particularity under Rule 9(b) where the claimant relies on the same circumstances to establish both fraud (or mistake) and the agency relationship. 191 F.3d 777, 783 (7th Cir.1999); Guaranty Residential Lending, Inc. v. International Mortg. Center, Inc., 305 F.Supp.2d 846 (N.D. Ill. 2004). In Lachmund, the plaintiff relied on his allegations of a fraudulent conspiracy in order to allege the existence of an agency relationship, so the court held that he had to allege the agency relationship with particularity. 191 F.3d at 783.

Here, the Court finds that the LMOJ parties' general allegation of agency is sufficient, as it does not rely on the allegations of mistake. The allegations that underlie the claim of mistake (the intention of all the parties that the policy would meet the LMOJ parties' stated needs, the Snyder parties' representations as to the policy's coverage dates, and the fact that the policy does not meet the LMOJ parties' stated needs) are independent from the allegation that the Snyder parties were the agents of Hartford. See Anderson v. Elmhurst Chevrolet, Inc., 03-c-5662, 2004 WL 2038170, *3 (N.D. Ill. Sept. 2, 2004); Sequel Capital, LLC v. Rothman, 03-c-0678, 2003 WL 22757758, *13 (N.D. Ill. Nov. 20, 2003). Therefore, Hartford's Motion to Strike and Dismiss the LMOJ parties' Counterclaim (Doc. 42) is denied, and the LMOJ parties' Counterclaim may stand as pled.

IT IS THEREFORE ORDERED:

1. The Motion for Leave to File Supplemental Response to Third-Party Defendants' Motion to Dismiss by Third-Party Plaintiffs Lawrence Moore & Ogar, Fred Moore, Helen Ogar, and Kevin Jacobs (Doc. 35) is GRANTED.

2. The Motion to Dismiss the Third-Party Complaint by Third-Party Defendants Tara Conklin and Snyder & Snyder Agency, Inc. (Doc. 19) is DENIED.

3. The Motion to Strike and Dismiss Defendants' Affirmative Defense by Plaintiff, Hartford Casualty Company (Doc. 37) is GRANTED.

4. Defendants Lawrence Moore & Ogar, Fred Moore, Helen Ogar, and Kevin Jacobs are ALLOWED fourteen days from the date of this Order to file an amended affirmative defense or counterclaim, if necessary.

5. The Motion to Strike and Dismiss Lawrence Moore & Ogar, Fred Moore, Helen Ogar, and Kevin Jacobs Counterclaim (Doc. 42) is DENIED.

6. This matter is REFERRED to Magistrate Judge Gorman for further pretrial proceedings.

Entered this <u>20th</u> day of January, 2010.

                                                            s/ Joe B. McDade
                                                            JOE BILLY McDADE
                                                        United States District Judge