E-FILED
Tuesday, 10 August, 2010  11:07:23 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRED MOORE, *an individual*, HELEN OGAR, *an individual*, KEVIN JACOBS, *an individual*, BETTY POTASNAK, *an individual*, VICKI COOK MUHS, *an individual*, PK MANAGEMENT CO. INC., *an Illinois corporation*, LAWRENCE MOORE & OGAR, *successor in interest to Lawrence Moore Ogar & Jacobs*, and PAUL LAWRENCE, *as Special Administrator of the Estate of William Lawrence, deceased*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | Case No.  08-cv-1350 |
| | ) | |
| and | ) | |
| | ) | |
| LAWRENCE MOORE & OGAR, *successor in interest to Lawrence Moore Ogar & Jacobs*, FRED MOORE, *an individual*, HELEN OGAR, *an individual*, KEVIN JACOBS, *an individual*, | ) ) ) ) ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TARA CONKLIN and SNYDER & SNYDER AGENCY, INC., | ) ) | |
| | | |
| Third-Party Defendants. | | |

# O R D E R   &   O P I N I O N

This matter is before the Court on Hartford Casualty Insurance Company's ("Hartford") Motion for Summary Judgment as to Count I of its Amended Complaint for Declaratory Judgment (Doc. 48). For the reasons stated below, Hartford's Motion for Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the Court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The Court draws only reasonable inferences. *Id.*

It is not the Court's function to scour the record in search of evidence to defeat a motion for summary judgment. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (*quoting Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)). Once the movant has met its burden of showing the Court that there are no genuine issues of material fact, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*,

2

258 F.3d 557, 563 (7th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).  At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

BACKGROUND

## I.    Factual Background

From January 1, 2005 to November 1, 2008, Lawrence, Moore, Ogar & Jacobs ("LMOJ"),[1] was a partnership of attorneys in Bloomington, Illinois; Fred Moore, Helen Ogar, and Kevin Jacobs were partners in the firm, and William Lawrence, now deceased and represented here by Paul Lawrence, the special administrator of his estate, was of counsel (LMOJ and these attorneys referred to collectively as the "LMOJ parties").  (Ogar Aff. at ¶ 2).

Hartford, through Snyder & Snyder Agency, Inc., and its employee Tara Conklin (Snyder & Snyder Agency, Inc. and Tara Conklin referred to collectively as the "Snyder parties"), issued a liability insurance policy, number 83 SBA UP6298, to LMOJ with a retroactive date of December 21, 2006 and extending to December

---

[1]    As noted by Magistrate Judge Gorman in a February 10, 2009 text-only entry, the law firm Lawrence, Moore & Ogar is the successor in interest to the law firm of Lawrence, Moore, Ogar & Jacobs, which existed during the dates relevant to this dispute.  (Doc. 8 at 2).  Lawrence, Moore & Ogar was created on November 1, 2008.  (Doc. 8 at 2).  The caption was amended to reflect this distinction.  Therefore, the Court will refer to both Lawrence, Moore & Ogar and Lawrence, Moore, Ogar & Jacobs as "LMOJ," as that was the name of the firm during the time periods relevant to this suit.

21, 2007, which was renewed on December 21, 2007, to extend to December 21, 2008. (Doc. 71 at ¶ 8). This policy provides that Hartford

> shall pay on behalf of the "insured" all sums in excess of the deductible which the "insured" shall become legally obligated to pay as "damages" by reason of any act, error, or omission, including "claims" arising out of "personal injury", committed or alleged to have been committed prior to the end of the 'policy period' and subsequent to the "retroactive date."

(Pltf's Ex. B. at Professional Liability Coverage Form § I(A)). "Retroactive date," in turn, is defined as "the date specified in the Declarations…on or after which an act, error, omission, or 'personal injury' must have occurred in order for any 'claim' or any notification given to [Hartford]…arising from such act, error, omission, or 'personal injury' to be covered under this Coverage Form." (Pltf's Ex. B at Professional Liability Coverage Form § I(B)). The retroactive date provided in the Declarations is December 21, 2006. (Pltf's Ex. B at Lawyers' Professional Liability Declarations).

At the time the policy was issued, Snyder & Snyder Agency was under an agency agreement with Hartford.[2] (Doc. 71 at ¶ 10). In or before December 2006, Hartford initiated a marketing campaign that entailed developing a number of "leads" for possible professional liability coverage clients in the central Illinois area, including LMOJ. (Doc. 57 at 16 ¶¶ 9-10). Around July 2006, Hartford provided a lead regarding LMOJ to Snyder & Snyder Agency, and around September 2006, Hartford prepared a "prospecting letter" to be mailed by Snyder & Snyder Agency to

---

[2] Hartford does not deny this or the remaining facts discussed in this paragraph, but asserts that they are immaterial. The Court agrees that they are immaterial, in that, even if they are as the Snyder parties assert, they do not preclude the entry of summary judgment for Hartford.

LMOJ to attempt to sell LMOJ professional liability coverage; Snyder & Snyder Agency mailed this letter to LMOJ. (Doc. 57 at ¶¶ 11-13). Conklin advised Ogar that a retroactive date of December 21, 2006, would provide legal malpractice coverage for the attorneys in the firm back to the time they became licensed to practice law and for the firm since its inception, as requested by the LMOJ parties. (Ogar Aff. at ¶ 7). Ogar relied on Conklin's representation in accepting the policy with December 21, 2006 as the retroactive date. (Ogar Aff. at ¶ 8). LMOJ paid its insurance premium directly to Hartford. (Ogar Aff. at ¶ 9).

On March 17, 2008, Betty L. Potasnak, Vicki Cook Muhs, and PK Management Co., Inc. ("*Potasnak* plaintiffs") filed a legal malpractice suit ("*Potasnak* suit") against the LMOJ parties in the Seventh Judicial Circuit of Sangamon County, Illinois, alleging that Jacobs and LMOJ had failed to properly prosecute three appeals on behalf of the *Potasnak* plaintiffs, and that they had been damaged in excess of $50,000 by the resulting adverse judgment. (Pltf's Ex. A). The actions by the LMOJ parties surrounding these appeals took place in 2005 and 2006, ending July 27, 2006. (Pltf's Exs. H-K). On April 11, 2008, the LMOJ parties tendered their defense in the *Potasnak* malpractice suit to Hartford, and, on May 15, 2008, Hartford denied defense and indemnity. (Doc. 55 at ¶¶ 21-22; Doc. 62 at ¶¶ 21-22).

## II. Procedural Background

Hartford filed its Complaint for Declaratory Judgment against Fred Moore, Helen Ogar, Kevin Jacobs, Paul Lawrence, as Special Administrator of the Estate of William Lawrence, Lawrence Moore & Ogar, successor in interest to Lawrence

Moore Ogar & Jacobs, Betty Potasnak, Vicki Cook Muhs, and PK Management Co., Inc., in this Court on December 1, 2008; it filed its Second Amended Complaint on February 12, 2010.[3]  (Docs. 1 & 55).  Hartford sought a declaration that it had no duty to defend or indemnify the LMOJ parties in the *Potasnak* suit.  In each of its Complaints, Hartford alleged that it has no duty to defend or indemnify the LMOJ parties (1) because the conduct of which the *Potasnak* plaintiffs complained occurred prior to the policy's retroactive date, (2) because the LMOJ parties knew or could have foreseen, as of the policy's effective date, that the conduct of which the *Potasnak* plaintiffs complained could result in the basis of a claim, and (3) because the LMOJ parties made misrepresentations in their application to Hartford by failing to disclose the facts out of which the *Potasnak* suit arose.  (Doc. 55).  It is this first argument that is the subject of Hartford's instant Motion for Summary Judgment.  (Doc. 48).

On July 16, 2009, the LMOJ parties filed a Counterclaim against Hartford, alleging that the policy, as issued, is the product of a mutual mistake of fact between the parties, and should be reformed; in response to Hartford's Second

---

[3]      Defendants Betty Potasnak, Vicki Cook Muhs, and PK Management Co., Inc., were named as Defendants "solely as [] interested part[ies] to be bound by the judgment herein."  (Doc. 55 at ¶¶ 10-12).  Their attorney, Lawrence Stein, entered his appearance on January 14, 2009, filed an Answer on their behalf on February 12, 2009, and attended the April 16, 2010 Rule 16 scheduling conference.  (Docs. 5 & 9; 4/16/10 Minute Entry).  On April 1, 2009, these Defendants acknowledged their position as "mere stakeholders" who would be bound by judgment in the declaratory judgment action.  (Doc. 21 at 1).  In addition, they noted that they "do not intend to actively participate in this lawsuit."  (Doc. 21 at 1).  Since the Rule 16 conference, these Defendants have not participated in this case.
        Paul Lawrence was dismissed from this suit on April 16, 2010; in the Second Amended Complaint, he was added back as a defendant and executed a waiver of service.  (4/16/10 Minute Entry and Text Order; Docs. 55, 60).

Amended Complaint, they repled the Counterclaim with the same allegations on February 26, 2010.  (Docs. 40 & 62).  Specifically, the Counterclaim alleges that LMOJ informed the Snyder parties, who were acting as Hartford's agents, that they needed an insurance policy to cover any acts of legal malpractice since the time the firm's partners were licensed to practice law, as well as for the firm since its inception, and that Hartford, acting through the Snyder parties, informed LMOJ that both of these requirements would be met by a December 21, 2006 retroactive date.  (Doc. 62 at ¶¶ 2-6, 10).  On January 20, 2010, the Court denied Hartford's Motion to Strike and Dismiss the Counterclaim.  (Doc. 47).  Hartford had argued that it was not pled sufficiently under Rule 9(b), which requires that allegations of fraud or mistake "state with particularity the circumstances constituting fraud or mistake."  The Court disagreed, finding that the claim was pled with sufficient particularity to withstand the Rule 9(b) challenge.[4]

---

[4]      In addition, the Snyder parties have filed a Cross-Claim against Hartford, and Lawrence and the other LMOJ parties have both filed Third-Party Complaints against the Snyder parties.

On February 9, 2009, the LMOJ parties (except Lawrence, who was added as a defendant later) filed a Third-Party Complaint against the Snyder parties.  (Doc. 8).  The Third-Party Complaint alleges that the Snyder parties were negligent in obtaining insurance coverage for the LMOJ parties, and seeks damages in the amount of $980,000.  The LMOJ parties assert that the Snyder parties, though informed by LMOJ that the policy needed to cover the period of time during which LMOJ was in existence and during which the partners were licensed to practice law, failed to ensure that the policy would cover those time periods and misrepresented the coverage of the policy to the LMOJ parties.  On January 20, 2010, this Court denied the Snyder parties' Motion to Dismiss the LMOJ parties' Third-Party Complaint against them.  (Doc. 47).  The Court found that impleader of the Snyder parties by the LMOJ parties was proper because the Snyder parties' liability to the LMOJ parties is dependent on the outcome of Hartford's suit for declaratory judgment against the LMOJ parties, and would require examination of much of the same evidence; the fact that some of the LMOJ parties' claims were "contingent" upon the outcome of the outcome of both the state-court malpractice

### DISCUSSION

In its Motion for Summary Judgment as to Count I of its Second Amended Complaint, Hartford argues that it has no duty to defend or indemnify the LMOJ parties in the *Potasnak* suit, as the events giving rise to that suit occurred prior to December 21, 2006, the retroactive date provided in the policy.[5]  (Doc. 49).  The LMOJ parties respond with the argument that their Counterclaim for reformation of the policy due to a mutual mistake of fact creates two genuine issues of material

_____

action and Hartford's declaratory judgment claim was not a bar to the Third-Party Complaint.  (Doc. 47 at 6-14).

   Hartford was granted leave to file its Second Amended Complaint on February 12, 2010 to add Paul Lawrence, as Special Administrator of the Estate of William Lawrence, as a Defendant.  (Doc. 55).  Thereafter, on March 12, 2010, Lawrence filed his own third-party complaint against the Snyder parties, making the same allegations that the other LMOJ parties had made in their Third-Party Complaint.  (Doc. 70).  The Snyder parties have filed a Motion to Dismiss Lawrence's Third-Party Complaint, which is now pending before the Court.  (Doc. 73).

   On February 19, 2010, the Snyder parties filed their Answer to the Third-Party Complaint, which included a Cross-Claim against Hartford.  (Doc. 57 at 14-20).  The Snyder parties alleged that Hartford: (1) failed to properly train its underwriter and insurance producers, (2) failed to properly communicate the significance and application of the retroactive date to the LMOJ parties, (3) failed to make a proper inquiry with the LMOJ parties regarding the possibility of potential claims for legal malpractice preceding the effective date of the policy, (4) failed to follow its own guidelines with regard to determining potential claims for legal malpractice preceding the effective date of the policy, and (5) failed to make an adequate inquiry with regard to potential malpractice claims prior to the effective date of the policy when reviewing the policy for renewal.  (Doc. 57 at 18-19).  The Snyder parties further alleged that these actions resulted in the damages claimed by the LMOJ parties against the Snyder parties, and stated that they were entitled to contribution from Hartford pursuant to the Illinois Joint Tortfeasor Contribution Act if the Snyder parties were found liable to the LMOJ parties.  (Doc. 57 at 19).  Hartford has filed a Motion to Dismiss the Cross-Claim, which is now pending before the Court.  (Doc. 67).

[5]    Hartford first asserts that Illinois law should govern this matter.  (Doc. 49 at 8).  The LMOJ parties do not contest this assertion in their Response, and the Court agrees that Illinois law appears to properly apply to this case, which is before the Court under its diversity jurisdiction.

fact that preclude the entry of summary judgment: whether the Snyder parties were acting as Hartford's agents in negotiating and drafting the policy, and whether there was a mutual mistake of fact between the LMOJ parties and Hartford (acting through the Snyder parties).[6]  (Doc. 59).  Hartford replies that the LMOJ parties' Counterclaim in fact asserts a mutual mistake of law, which does not allow reformation of a contract, and that, even taking all of the facts as alleged by the LMOJ parties as true, the policy does not cover the *Potasnak* suit as a matter of law.  (Doc. 65).

The Snyder parties have also filed a Response to the Motion for Summary Judgment, in which they essentially support the LMOJ parties' argument that the Counterclaim for reformation of the contract precludes the entry of summary judgment for Hartford.[7]  (Doc. 58).  The claim on which Hartford seeks summary judgment is not directed toward the Snyder parties, and the Snyder parties did not seek permission to file a response to the Motion for Summary Judgment and do not include any authority for the proposition that the Court should consider their Response.  In any event, however, as they do not present anything different from the Response of the LMOJ parties, the Court need not decide whether their Response should be considered.[8]

---

[6]   The LMOJ parties do not contend that any actions regarding the *Potasnak* suit took place after December 21, 2006.

[7]   The Court assumes that the Snyder parties prefer reformation of the policy as a resolution of this matter since they have been sued by the LMOJ parties for negligence; if the policy is reformed, the damages for which they could potentially be liable to the LMOJ parties would disappear or be greatly reduced.

[8]   The Snyder parties assert that a dispute exists as to whether the "declarations page bears the correct date," seeming to imply a possibility that the

Under Illinois law, the construction of a contract, including an insurance contract, is a question of law that is appropriate for summary judgment. *Connecticut Indem. Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 349 (7th Cir. 2003) (*citing Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (1993)).  Here, as outlined above, the terms of the policy require Hartford to defend or indemnify the LMOJ parties to a suit only when the acts giving rise to the suit occurred after the retroactive date and before the end of the policy period.  The LMOJ parties do not appear to contest this interpretation of the policy as written.  Therefore, as the policy is written, Hartford has no duty to defend or indemnify the LMOJ parties in the *Potasnak* suit, as the actions giving rise to that suit occurred prior to December 21, 2006, the retroactive date of the policy.

Instead, the LMOJ parties argue in their Counterclaim and in their Response to the Motion for Summary Judgment that the policy must be reformed in order to make it reflect the intention of the LMOJ parties and Hartford (acting through its agents, the Snyder parties) that all acts of malpractice by the LMOJ parties since their admittance to the bar and since the firm's inception would be covered by the policy.

In Illinois,

> In order for a court to reform an instrument on the ground of mistake, "'the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a

---

parties discussed a different date, but that the wrong one was inserted in the policy. (Doc. 58 at 10).  However, they do not present any evidence in support of this contention, and the LMOJ parties' evidence clearly shows that Conklin and Ogar discussed and agreed to the December 21, 2006 date, though they may have been acting under a mistake as to the legal effect of that date.

certain thing and, by a mistake, expressed another.'" The law of reformation applies to insurance policies.

*Zannini v. Reliance Ins. Co. of Illinois, Inc.*, 590 N.E.2d 457, 449-50 (Ill. 1992) (*quoting Wilcox v. Natural Gas Storage Co.*, 182 N.E.2d 158, 160 (Ill. 1962); *Ambarann Corp. v. Old Ben Coal Corp.*, 69 N.E.2d 835, 841 (Ill. 1946); *citing Magnus v. Barrett*, 557 N.E.2d 252, 255 (Ill.App. 1990)); *see also Wilcox*, 182 N.E.2d at 160.  The LMOJ parties thus argue that both they and the Snyder parties intended the policy to cover all acts of malpractice by the LMOJ parties since their admittance to the bar and since the firm's inception, and that, due to a mistake, the policy contained a retroactive date of December 21, 2006, which did not cover the entire period of time intended.

"Mutual mistake of fact 'contemplates a mistake of fact at the time the instrument was drawn, not as to the legal effect of the instrument, but as to the facts of the agreement.'"  *Friedman v. Development Management Group, Inc.*, 403 N.E.2d 610, 612 (Ill.App. 1980) (*quoting Jacobs v. Wilkerson*, 26 N.E.2d 860, 862 (Ill. 1940)).  The Court finds that, taking all of the inferences in the LMOJ parties' favor and the facts as alleged by them as true, this was a mistake of law, not of fact.  According to the LMOJ parties, Hartford, through Conklin, affirmatively represented to them that the December 21, 2006 date would meet their needs - Conklin and thus Hartford, then, were mistaken as to the *effect* of the December 21, 2006 date, and the LMOJ parties relied on and shared that mistake.  *See Jogger Mfg Corp. v. AddressographMultigraph Corp.*, 104 N.E.2d 655, 658 (Ill.App. 1952) (Where the "parties deliberately and intentionally used words to express the meeting of the minds and to describe the property subject to the license," when a

party gave "the wrong legal effect to the words used," it was "a mistake of law which affords no ground for reformation of the contract."). Conklin did not represent that she would insert a different date and then made an error in writing the policy. Both parties understood that December 21, 2006 was the date to be written into the policy. They merely misunderstood what the legal effect of that date was. This was thus a mistake of fact, which cannot support reformation of the policy.

The LMOJ parties contend that the case of *Brosam v. Employer's Mutual Casualty Co.*, shows that reformation is proper. In *Brosam*, the plaintiff sought to reform an insurance policy, which, as written, "contained [an] exclusion of liability for damage to property rented to the insured, or in the care, custody, or control of the insured." 209 N.E.2d 350, 352 (Ill.App. 1965). The plaintiff there sought to obtain an insurance policy that would cover horses in his care, custody, or control. A normal farm operations liability policy would cover horses in the care, custody, or control of the plaintiff, and the plaintiff agreed to purchase a normal farm operations policy. However, when the policy was delivered, it contained an exclusion on property in the care, custody, or control of the plaintiff. The mistake in *Brosam* was thus as to whether a normal farm liability policy would be issued, or whether a policy with an exclusion on property in the care, custody, or control of the plaintiff would be issued - the insurer had agreed to issue a normal farm liability policy, but in fact mistakenly issued a policy with an exclusion. There was no mistake by either party as to the *legal effect* of either type of policy, rather the mistake was in the type of policy actually issued. *Id.* at 356-57. Here, the LMOJ parties and Hartford, because of their mistaken legal understanding, agreed that

12

the policy should have a retroactive date of December 21, 2006, and this was precisely the term the policy contained - the fact that the parties were mistaken as to the legal effect of this retroactive date renders this a mistake of law, not a mistake of fact.

In a few cases, Illinois courts have found that equity required the reformation of contracts, though the mistake was one of law, not fact. In *Barkhausen v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, the Illinois Supreme Court held that the question of whether the alleged mistake was one of fact or law is not important where there would be a gross miscarriage of justice for the court to refuse to reform a contract. 120 N.E.2d 649, 658 (Ill. 1954). However, as pointed out by the Illinois appellate court in *Friedman*, *Barkhousen* "has been virtually ignored by [the Illinois] supreme court which, in cases after *Barkhausen*, has consistently required a factual mistake as a prerequisite for an action for reformation." 403 N.E.2d at 613 (*citing Wilcox*, 182 N.E.2d 158; *Mahon v. State Farm Mutual Automobile Insurance Co.*, 184 N.E.2d 718 (Ill. 1962)). *See also Zannini*, 590 N.E.2d at 449-50. Moreover, as noted by the bankruptcy court for the Northern District of Illinois, though *Barkhousen* and two appellate cases seem to indicate that the prohibition on reformation for mistakes of law has been somewhat "eroded" where "two parties enter into a contract based on a mutual misunderstanding of the law governing their antecedent legal rights," the law allowing reformation for legal mistakes is weaker "when two parties mutually mistake the legal effect of the particular document they are about to effectuate." *In re Carter*, 312 B.R. 356, 364-65 (Bankr. N.D.Ill. 2004) (*citing Barkhausen v. Continental Ill. Nat'l Bank & Trust*

*Co. of Chicago*, 120 N.E.2d 649, 657-58 (Ill. 1954); *Estate of Hurst v. Hurst*, 769 N.E.2d 55, 60-62 (Ill.App. 2002); *Harbaugh v. Hausman*, 569 N.E.2d 523, 526-28 (Ill.App. 1991)).

In *Barkhousen*, a trustee had assumed the covenants of a mortgage on property acquired by the trust.  The plaintiffs, who were the trust beneficiaries, sought and received a declaration that they were not personally liable for this mortgage; they also sought a reformation of the agreement executed by the trustee to show that they were not intended to assume any personal liability.  The court granted the request for reformation, finding that the parties did not intend for the plaintiffs to personally guarantee the debt, and that it would be a "gross miscarriage of justice" for them to be held personally liable.  In *Harbaugh*, an Illinois appellate court distinguished between two types of mistakes of law, ones that "arise[] when a person enters into a contract not fully understanding the legal ramifications of the contract," which do not allow reformation, and the ones "where a person is mistaken 'as to his own antecedent existing legal rights,'" which do allow reformation, as in *Barkhousen*.  569 N.E.2d at 528 (*citing* 3 J. POMEROY, EQUITY JURISPRUDENCE §§ 841, 849 (5th ed. 1941)).  The court allowed the defendant to assert reformation as a defense where one party to a contract misunderstood the legal effect of a prior contract, and where he would not have entered into the later contract if he had properly understood the earlier contract.  *Id*. at 526, 529.  In *Hurst*, the defendants sought reformation of language in a note that they and their attorney intended to create a joint tenancy, but which in fact created a tenancy in common.  769 N.E.2d at 60-62.  The appellate court, relying on *Barkhousen*, found

that reformation was appropriate, though the mistake of law did not concern the parties' antecedent legal rights.  *Id*. at 62.

As noted above, the Illinois supreme court has not once cited *Barkhousen* in the 56 years since it was decided, and consistently states that only a mistake of fact can justify reformation; only *Hurst*, *Harbaugh*, *Carter*, and one other case[9] have cited *Barkhousen* for the point that a mistake of law can lead to reformation. Moreover, the Court finds that, even if Illinois does allow a court to sometimes exercise its equitable power to reform a contract based on a mutual mistake of law, this is a very limited doctrine that is not applicable in the instant case.  As explained by *Harbaugh* and *Carter*, the case for reformation is clearest when the legal mistake concerns the parties' antecedent legal rights, and is dubious when the parties instead misunderstand the legal effect of the contract to be reformed.  Only *Hurst* allowed reformation where the parties misunderstood the contract they had entered, and notably, in *Hurst*, no party lost any bargained-for benefit by the reformation: an estate merely lost a windfall it would have received if the note had been unreformed.

Therefore, given the dubious precedential value of *Barkhousen* in general, and the fact that both *Harbaugh* and *Carter* seem to limit reformation for mistakes of law to cases where the legal mistake concerns the parties' antecedent legal rights, there can be no reformation in this case for the legal mistake alleged.  Here, the mistake concerned the legal effect of a term within the instant contract, and was

---

[9]      This other case, *Harden v. Desideri*, merely notes that *Barkhousen* provides that a mistake of law could justify reformation, but found that the mistake alleged in *Harden* was one of fact.  315 N.E.2d 235, 241-42 (Ill.App. 1974).

not as to the parties' antecedent legal rights; in addition, unlike in *Hurst*, if the policy is reformed as the LMOJ parties request, Hartford would not just be giving up a windfall, but would be required to defend and indemnify the LMOJ parties in the *Potasnak* suit, as well as in any other suits arising from actions occurring since the beginning of the LMOJ parties' legal practices.

Given the Court's finding that reformation of the policy is not available to the LMOJ parties as a matter of law, it appears that judgment in Hartford's favor on the LMOJ parties' counterclaim for reformation is appropriate.  The parties will therefore be directed to show cause why the counterclaim for reformation should not be dismissed as a matter of law.

By today's decision, the Court grants judgment in Hartford's favor on Count I of its Second Amended Complaint for declaratory judgment, disposing of Hartford's claim in this matter.  In addition, if the Court also grants judgment in Hartford's favor on the LMOJ parties' counterclaim, this matter will be left with only the three state-law claims for which the sole claimed basis of subject-matter jurisdiction is § 1367's grant of supplemental jurisdiction.[10]  Title 28 U.S.C. § 1367 provides that a district court "may decline to exercise supplemental jurisdiction" over pendent

---

[10]     As the Court noted in its January 20, 2010 decision, supplemental jurisdiction is the only basis of subject-matter jurisdiction over the LMOJ parties' Third-Party Complaint against the Snyder parties.  (Doc. 47 at 13-14).   This is just as true for Lawrence's Third-Party Complaint against the Snyder parties.

The other state-law claim in question is the Snyder parties' Cross-Claim for contribution against Hartford.  In their Cross-Claim, the Snyder parties claim only supplemental jurisdiction, though it appears that they are of diverse citizenship from Hartford.  (Doc. 57 at ¶ 7).  The Court cannot determine on the face of the Cross-Claim whether the exercise of diversity jurisdiction over this would be proper, as the Snyder parties do not allege an amount in controversy as required for jurisdiction under 28 U.S.C. § 1332.

state-law claims if the court has dismissed all claims over which it has jurisdiction.[11] *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994) (*citing* 28 U.S.C. § 1367(c)(3)).  The parties will therefore also be directed to show cause why the Court should not dismiss both the Third-Party Complaints and the Cross-Claim under § 1367(c)(3).

## CONCLUSION

Hartford Casualty Insurance Company's Motion for Summary Judgment as to Count I of its Amended Complaint for Declaratory Judgment (Doc. 48) is GRANTED.  The Court therefore FINDS that: Hartford owes no insurance coverage under Hartford policy 83 SBA UP6298 to Paul Lawrence, Helen Ogar, Fred Moore, Kevin Jacobs, and Lawrence, Moore & Ogar for the allegations asserted against them in the *Potasnak* suit; Hartford has no duty under Hartford policy 83 SBA UP6298 to defend Paul Lawrence, Helen Ogar, Fred Moore, Kevin Jacobs, and Lawrence, Moore & Ogar for the claims made against them in the *Potasnak* suit; and Hartford has no duty under Hartford policy 83 SBA UP6298 to indemnify Paul

---

[11]     A district court should consider and weigh the factors of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction over pendent state-law claims.  *Wright*, 29 F.3d at 1251 (*citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).

As a general rule, when all claims over which there are independent bases of federal jurisdiction are disposed of prior to trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Wright*, 29 F.3d at 1250 (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996)).  An exception exists where the statute of limitations on the state law claim would preclude the plaintiff's re-filing in state court.  *Wright*, 29 F.3d at 1251. The general rule is also applicable where, as here, the court has granted summary judgment on all the claims over which there are independent bases for federal subject-matter jurisdiction.  *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998).

Lawrence, Helen Ogar, Fred Moore, Kevin Jacobs, and Lawrence, Moore & Ogar for any judgment and/or settlement entered against it or for any attorneys' fees, costs, expenses and/or disbursements Paul Lawrence, Helen Ogar, Fred Moore, Kevin Jacobs, and Lawrence Moore & Ogar incurred in their own defense of the *Potasnak* suit.  Within 21 days of the date of this order, the parties SHALL show cause why judgment should not be entered in Hartford's favor on the Counterclaim by Paul Lawrence, Helen Ogar, Fred Moore, Kevin Jacobs, and Lawrence Moore & Ogar, and why the Court should not dismiss, pursuant to 28 U.S.C. § 1367(c)(3), both the Third-Party Complaints and the Cross-Claim.

IT IS SO ORDERED.


Entered this <u>10th</u> day of August, 2010.


　　　　　　　　　　　　　　<u>　　　s/ Joe B. McDade　　　　</u>
　　　　　　　　　　　　　　　　JOE BILLY McDADE
　　　　　　　　　　　　　United States Senior District Judge