UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
**PEORIA DIVISION**

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, ) ) Plaintiff/Counter-Defendant, ) ) v. ) ) FRED MOORE, *an individual*, HELEN OGAR, *an individual*, KEVIN JACOBS, *an individual*, BETTY POTASNAK, *an individual*, VICKI COOK MUHS, *an individual*, PK MANAGEMENT CO. INC., *an Illinois corporation*, LAWRENCE MOORE & OGAR, *successor in interest to Lawrence Moore Ogar & Jacobs*, and PAUL LAWRENCE, *as Special Administrator of the Estate of William Lawrence, deceased*, ) ) Defendants/Counter-Plaintiffs, ) ) and ) ) LAWRENCE MOORE & OGAR, *successor in interest to Lawrence Moore Ogar & Jacobs*, FRED MOORE, *an individual*, HELEN OGAR, *an individual*, KEVIN JACOBS, *an individual*, ) ) Third-Party Plaintiffs, ) ) v. ) ) TARA CONKLIN and SNYDER & SNYDER AGENCY, INC., ) ) Third-Party Defendants. | Case No. 08-cv-1350 |

# **O R D E R & O P I N I O N**

On August 10, 2010, this Court issued an Order and Opinion ("Order and Opinion of August 10, 2010") granting Hartford Casualty Insurance Company's ("Hartford's") Motion for Summary Judgment as to Count I of its Amended Complaint for Declaratory Judgment, and ordering the parties to show cause as to 1) why Defendant Lawrence, Moore, Ogar & Jacobs' ("LMOJ's"),[1] Counterclaim for reformation should not be dismissed as a matter of law, and 2) why, if the LMOJ Counterclaim was dismissed as a matter of law, the Third Party Complaints of LMOJ and Paul Lawrence, as Special Administrator of the Estate of William Lawrence, deceased, ("Lawrence") against Tara Conklin and Snyder & Snyder Agency, Inc. (referred to collectively as "Snyder parties"), as well the Snyder parties' Cross-Claim against Hartford, should not be dismissed for lack of jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). (Doc. 82).

Now before the Court are Hartford's Response to the Order to Show Cause (Doc. 83), LMOJ's Motion for Reconsideration and Response to Order to Show Cause and Memorandum in Support (Docs. 85 and 86), LMOJ's Motion for Leave to File an Amended Counterlcaim (Doc. 87), Hartford's Response to LMOJ's Motion for Leave to File an Amended Counterclaim and Motion for Reconsideration (Doc. 90), and

---

[1] As noted by Magistrate Judge Gorman in a February 10, 2009 text-only entry, the law firm Lawrence, Moore & Ogar is the successor in interest to the law firm of Lawrence, Moore, Ogar & Jacobs, which existed during the dates relevant to this dispute. (Doc. 8 at 2). Lawrence, Moore & Ogar was created on November 1, 2008. (Doc. 8 at 2). The caption was amended to reflect this distinction. Therefore, the Court will refer to Lawrence, Moore & Ogar and Lawrence, Moore, Ogar & Jacobs as "LMOJ," as that was the name of the firm during the time periods relevant to this suit.

LMOJ's Motion for Leave to File *Instanter* a Reply to Hartford's Response (Doc. 92). Also before the Court are Hartford's previously pending Motion to Dismiss the Snyder parties' Cross-Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 67), and the Snyder parties' Motion to Dismiss Lawrence's Third-Party Complaint (Doc. 73). For the following reasons, LMOJ's Motion to File a Reply is GRANTED and the Reply is DEEMED filed, LMOJ's Motion for Reconsideration is DENIED, LMOJ's Motion for Leave to File an Amended Counterclaim is DENIED, and LMOJ's Counterclaim against Hartford is DISMISSED. In addition, Hartford's Motion to Dismiss the Snyder parties' Cross-Claim is GRANTED and the Cross-Claim is DISMISSED. Finally, the Third Party Complaint of LMOJ and the Third Party Complaint of Lawrence are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction pursuant 28 U.S.C. § 1367. Accordingly, the Snyder parties' Motion to Dismiss Lawrence's Third-Party Complaint is rendered MOOT.

## BACKGROUND

**I. Factual Background**

From January 1, 2005 to November 1, 2008, LMOJ was a partnership of attorneys in Bloomington, Illinois. Hartford issued a liability insurance policy to LMOJ, effective December 21, 2007 to December 21, 2008, and retroactive to December 21, 2006 ("policy"). On March 17, 2008, Betty L. Potasnak, Vicki Cook Muhs, and PK Management Co., Inc. ("*Potasnak* plaintiffs") filed suit against LMOJ and its partners, Fred Moore, Helen Ogar, and Kevin Jacobs (LMOJ and its partners collectively referred to as the "LMOJ parties") in the Seventh Judicial Circuit of Sanagmon County, Illinois, alleging that they had failed to properly

prosecute three appeals on behalf of the *Potasnak* plaintiffs. On April 11, 2008, the LMOJ parties tendered their defense in the *Potasnak* suit to Hartford, and, on May 15, 2008, Hartford denied defense and indemnity.

## II. Procedural Background

Hartford filed its Complaint for Declaratory Judgment in this Court on December 1, 2008; it filed its Second Amended Complaint on February 12, 2010. (Docs. 1 & 55). Hartford sought a declaration that it had no duty to defend or indemnify the LMOJ parties in the *Potasnak* suit. In each of its Complaints, Hartford alleges that it has no duty to defend or indemnify the LMOJ parties (1) because the conduct of which the *Potasnak* plaintiffs complained occurred prior to the policy's retroactive date, (2) because the LMOJ parties knew or could have foreseen, as of the policy's effective date, that the conduct of which the *Potasnak* plaintiffs complained could result in the basis of a claim, and (3) because the LMOJ parties made misrepresentations in their application to Hartford by failing to disclose the facts out of which the *Potasnak* suit arose. (Doc. 55).

On July 16, 2009, the LMOJ parties filed a Counterclaim against Hartford, alleging that the policy, as issued, is the product of a mutual mistake of fact between the parties, and should be reformed. (Doc. 40). On January 20, 2010, this Court denied Hartford's Motion to Strike and Dismiss the LMOJ parties' Counterclaim against it. (Doc. 47). The Court found that the LMOJ parties' Counterclaim against Hartford was pled with sufficient particularity under Rule 9(b). (Doc. 47 at 15-19).

Prior to filing their Counterclaim against Hartford, on February 9, 2009, the LMOJ parties filed a Third-Party Complaint against the Snyder parties. (Doc. 8). The Third-Party Complaint alleges that the Snyder parties were negligent in obtaining insurance coverage for the LMOJ parties, and seeks damages in the amount of $980,000. The LMOJ parties assert that the Snyder parties, though informed by LMOJ that the policy needed to cover the period of time during which LMOJ was in existence and during which the partners were licensed to practice law, failed to ensure that the policy would cover those time periods and misrepresented the coverage of the policy to the LMOJ parties. On January 20, 2010, this Court denied the Snyder parties' Motion to Dismiss the LMOJ parties' Third-Party Complaint against them. (Doc. 47). The Court found that impleader of the Snyder parties by the LMOJ parties was proper because the Snyder parties' liability to the LMOJ parties is dependent on the outcome of Hartford's suit for declaratory judgment against the LMOJ parties, and would require examination of much of the same evidence; the fact that some of the LMOJ parties' claims were "contingent" upon the outcome of both the state-court malpractice action and Hartford's declaratory judgment claim was not a bar to the Third-Party Complaint. (Doc. 47 at 6-14).

On February 19, 2010, the Snyder parties filed their Answer to the Third-Party Complaint, which included a Cross-Claim against Hartford. (Doc. 57 at 14-20). The Snyder parties alleged that Hartford: (1) failed to properly train its underwriter and insurance producers, (2) failed to properly communicate the significance and application of the retroactive date to the LMOJ parties, (3) failed to

5

make a proper inquiry with the LMOJ parties regarding the possibility of potential claims for legal malpractice preceding the effective date of the policy, (4) failed to follow its own guidelines with regard to determining potential claims for legal malpractice preceding the effective date of the policy, and (5) failed to make an adequate inquiry with regard to preceding the effective date of the policy when reviewing the policy for renewal.  (Doc. 57 at 18-19).  The Snyder parties further alleged that these actions resulted in the damages claimed by the LMOJ parties against the Snyder parties, and stated that they were entitled to contribution from Hartford pursuant to the Illinois Joint Tortfeasor Contribution Act if the Snyder parties were found liable to the LMOJ parties.  (Doc. 57 at 19).  Hartford has filed a Motion to Dismiss the Cross-Claim, which is now before the Court.  (Doc. 67).

In addition, Hartford was granted leave to file its Second Amended Complaint on February 12, 2010 to add Paul Lawrence, as Special Administrator of the Estate of William Lawrence, deceased, who was a partner in LMOJ, as a Defendant.  (Doc. 55).  Thereafter, on March 12, 2010, Lawrence filed his own third-party complaint against the Snyder parties, making the same allegations that the other LMOJ parties had made in their Third-Party Complaint.  (Doc. 70).  The Snyder parties have filed a Motion to Dismiss Lawrence's Third-Party Complaint, which is now before the Court.  (Doc. 73).

On August 10, 2010, the Court granted Hartford's Motion for Summary Judgment as to Count I of its Second Amended Complaint, finding that the policy issued by Hartford to LMOJ did not cover acts occurring before December 21, 2006, including those alleged by the *Potasnak* suit, that any mutual mistake of the parties

in the terms of the policy was one of law, and that such a mistake of law was not subject to reformation. (Doc. 82). Accordingly, the Court directed the parties to show cause as to why the LMOJ Counterclaim for reformation against Hartford should not be dismissed as a matter of law and, in addition, why the remaining third party complaints and cross-claims should not be dismissed for lack of jurisdiction. (Doc. 82).

## LMOJ'S MOTION FOR RECONSIDERATION

In addition to responding to this Court's order to show cause, LMOJ has moved this Court to reconsider its Order and Opinion of August 10, 2010 pursuant to Federal Rule of Civil Procedure 59(e).[2] (Doc. 85). A motion to reconsider under Rule 59(e) is not an opportunity for a losing party to reargue the merits of its case with arguments and theories that could have been made before the court rendered judgment. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Rather, such motion is meant "to bring to the trial court's attention a manifest error of law or fact." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003). "A 'manifest error' is not demonstrated by the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Rather, the losing party must show the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.*

---

[2] In its Reply to Hartford's Response to LMOJ's Motion for Leave to File an Amended Counterclaim and Motion for Reconsideration, LMOJ points out that contrary to Hartford's assertions in its Response, this Motion was timely filed pursuant to Rule 59(e). LMOJ is correct that Rule 59(e) was amended in 2009 to expand the period for seeking reconsideration from 10 to 28 days. Accordingly, LMOJ's Motion for Reconsideration was timely filed. Fed. R. Civ. P. 59(e).

Here, LMOJ argues that this Court made a manifest error of fact and a manifest error of law. (Doc. 85 at 2). As to their first argument, LMOJ appears to argue that Hartford and LMOJ reached an agreement that the insurance policy would provide retroactive coverage to the date they began practicing law, but that Hartford's agent made a mistake in selecting which date would effectuate this purpose. This, LMOJ argues, was a mistake of fact, and the Court erred in finding otherwise. The Court fully considered this argument and found that because the parties were not mistaken as to the date to place into the agreement, but as to the *legal effect* of that date, this was a mutual mistake of law. (Doc. 82 at 11-13). LMOJ has failed to demonstrate to this Court that it made any manifest error in that decision.

With regards to their second argument, LMOJ states that in Illinois, reformation remains proper even if the mutual mistake is one of law and not fact. (Dco. 86 at 3). LMOJ bases this argument on the alleged continuing vitality of *Barkhausen v. Continental Illinois National Bank and Trust Co. of Chicago*, 120 N.E.2d 649 (Ill. 1954), which it argues this Court mistakenly disregarded. This Court, however, considered *Barkhausen*, as well as the two subsequent decisions discussed by LMOJ which relied upon it to hold that mutual mistakes of law are subject to court reformation. (Doc. 82 at 13-16). LMOJ also provides a litany of cases which have cited to *Barkhausen* over the past fifty years, that were not considered by this Court. Only two of those cases, however, cite *Barkhausen* for the point that a contract may be reformed due to a mistake of law. The first, *Smyth v. Kaspar American State Bank*, 127 N.E.2d 149 (Ill. App. 1955), cites *Barkhausen* for

the principle that a contract may be reformed due to a mistake in law, but only in very narrow circumstances, which this Court found not to exist here. The other, *Exchange Nat'l Bank of Chicago v. Universal City Studios, Inc.*, No. 79 C 4748, 1982 U.S. Dist. LEXIS 11715 (N.D. Ill, March 30, 1982), cited *Barkhausen* in a footnote as a contrary authority to the general rule that a mistake must be one of fact in order for a court to grant reformation. Because neither of these cases undermine the Court's Opinion and Order of August 10, 2010, and LMOJ has failed to show that the Court completely disregarded or misapplied controlling precendent, it is merely attempting to reargue the merits of its case and has failed to demonstrate a manifest error of law. Accordingly, LMOJ's Motion for Reconsideration is DENIED.

### LMOJ'S MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM

LMOJ has also filed a Motion for Leave to File an Amended Counterclaim. (Doc. 87). While this Court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), leave need not be granted when the amendment would be futile. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). Here, LMOJ's proposed Amended Counterclaim contains two claims for relief. The proposed Count I is substantially the same as LMOJ's previous Counterclaim, seeking reformation due to a mutual mistake of fact. (Doc.87-1 at 2-4). Count II alleges all the same facts as Count I, but concludes by alleging a mutual mistake of law. (Doc. 87-1 at 4).

This Court has already ruled that the mistake between the parties was one of law and not of fact. (Doc. 82 at 13). It was for this reason that the Court ordered LMOJ to show cause as to why Count I should not be dismissed as a matter of law.

As will be discussed below, LMOJ has failed to do this. Accordingly, allowing the amended Count I would be futile. In the Order and Opinion of August 10, 2010, the Court also held that a mutual mistake of law such as the one that occurred in this case is not subject to reformation. (Doc. 82 at 15). Thus allowing LMOJ's proposed Count II, which seeks reformation due to a mutual mistake of law, would be futile in that the Court has already found that despite the mutual mistake of law that occurred here, reformation is not available. Therefore, LMOJ's Motion for Leave to File an Amended Counterclaim (Doc. 87) is DENIED.

## PARTIES' RESPONSES TO ORDER TO SHOW CAUSE

### I. LMOJ Counterclaim

Because the Court has denied LMOJ's Motion to Reconsider and Motion for Leave to File an Amended Complaint, it must now consider whether it is proper to dismiss LMOJ's pending Counterclaim as a matter of law. In its Order and Opinion of August 10, 2010, this Court stated: "Given the Court's finding that reformation of the policy is not available to the LMOJ parties as a matter of law, it appears that judgment in Hartford's favor on the LMOJ parties' counterclaim for reformation is appropriate. The parties will therefore be directed to show cause why the counterclaim for reformation should not be dismissed as a matter of law." (Doc. 82 at 16).

Not surprisingly, Hartford agrees with the Court that judgment on the LMOJ Counterclaim is consistent with the Court's Order and Opinion of August 10, 2010. (Doc. 83 at 3). LMOJ, on the other hand, directed the Court to the arguments it made in response to Hartford's Motion for Summary Judgment and in support of

their Motion for Reconsideration. With regards to the former, the Court considered and rejected those arguments in its Order and Opinion of August 10, 2010, and with regards to the latter, the Court has discussed its reasons for rejecting them above. Accordingly, the Court can find no cause as to why, based upon the reasoning laid out in its Order and Opinion of August 10, 2010, the LMOJ parties' Counterclaim for reformation should not be dismissed as a matter of law. Therefore, LMOJ's Counterclaim against Hartford is DISMISSED.

## II. Snyder Parties' Cross-Claim

### A. Jurisdictional Basis

In its Order and Opinion of August 10, 2010, this Court also directed the parties to show cause as to why, if the Court determined that the LMOJ Counterclaim should be dismissed as a matter of law, the Court should not also dismiss the three supplemental claims before it pursuant to 28 U.S.C. § 1367. (Doc. 82 at 16-17).

With regards to the Snyder parties' Cross-Claim against it, Hartford argues that this Court retains diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 83 at 3). If the Court has independent jurisdiction over a claim, it should not be dismissed purusuant to § 1367(c)(3). In order for the Court to have diversity jurisdiction over a claim, all parties must be citizens of different states and the amount in controversy must exceed $75,000. § 1332(a). If one of the parties is a corporation, it is deemed to be a citizen of the state in which it is incorporated and in which it maintains its principal place of business. § 1332(c)(1). Hartford is an Indiana corporation with its principal place of business in Connecticut. (Doc. 45).

The Snyder parties are made up of Snyder & Snyder Agency and Tara Conklin. Snyder & Snyder Agency is an Illinois corporation with its principal place of business in Illinios, and Conklin is a resident of the state of Ilinois. (Doc. 57 at 15). Accordingly, Hartford and the Snyder parties are diverse in terms of citizenship.

It appears that the amount in controversy requirement is also satisfied here. Hartford alleges in its Response to Order to Show Cause that the parties have agreed that this amount exceeds $75,000. While such agreement is not evident to the Court, it does appear that the amount at issue is well over $75,000. In determining whether a claim meets the requisite amount in controversy the Court must engage in "an evaluation of the controversy described in the plaintiff's complaint and the record as a whole, as of the time the case was filed." *Uhl v. Thoroughbred Techn. & Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002).[3] In looking at the record as a whole in this case, the Court finds that the Snyder parties are seeking, under the Illinois Joint Tortfeasor Contribution Act ("Illinois Contribution Act"), 740 Ill. Comp. Stat. 100/2, contribution from Hartford on LMOJ's claims against them, which sought up to $980,000 in relief. (Docs. 57 at 19-20; 8 at 6, 7, 9 & 10).[4] Because the Hartford and the Snyder parties are diverse in

---

[3] Further, the fact that the LMOJ claims are now dismissed should not impact the Court's determination because developments during the life of a case "do not affect jurisdiction, which depends on the amount in controversy when the federal suit began." *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006). While the amount of the contribution claim may be contingent upon the amount recovered by LMOJ against Snyder, whether or not Snyder has a *right* to contribution is not contingent and thus amenable to disposition.

[4] The Illinois Contribution Act provides that "where two or more persons are subject to liability in tort arising out of the same in jury . . . there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 Ill. Comp. Stat. 100/2.

terms of citizenship and the amount-in-controversy when the claim was filed appears to exceed $75,000, the Court has diversity jurisdiction over it pursuant to 28 U.S.C. § 1332.

**B. Hartford's Motion to Dismiss on the Merits**

While the Snyder Cross-Claim cannot be dismissed for lack of jurisdiction, Hartford argues that it should be dismissed on the merits for failure to state a claim upon which relief can be granted, as argued in its pending Motion to Dismiss (Doc. 67). "In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (*citing Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must "plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007)). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 547. "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (*quoting Twombly*, 550 U.S. at 557; *Tamayo*, 526 F.3d at 1084).

In its Cross-Claim against Hartford, Snyder alleges that Hartford (1) failed to properly train its underwriter and insurance producers, (2) failed to properly communicate the significance and application of the retroactive date to the LMOJ parties, (3) failed to make a proper inquiry with the LMOJ parties regarding the

possibility of potential claims for legal malpractice preceding the effective date of the policy, (4) failed to follow its own guidelines with regard to determining potential claims for legal malpractice preceding the effective date of the policy, and (5) failed to make an adequate inquiry with regard to potential malpractice claims prior to the effective date of the policy when reviewing the policy for renewal. (Doc. 57 at 18-19). Snyder further alleges that these actions resulted in the damages claimed by the LMOJ parties against the Snyder parties, and states that they are entitled to contribution from Hartford pursuant to the Illinois Contribution Act if the Snyder parties are found liable to the LMOJ parties. (Doc. 57 at 19). Hartford argues that Snyder's contribution/negligence claims against it are barred by 1) the economic loss doctrine, and 2) the fact that Hartford had no duty to counsel LMOJ as to the adequacy of its insurance coverage. (Doc. 68 at 2).

To be liable under the Illinois Contribution Act, a defendant must be potentially liable to the plaintiff in tort. *See North American Van Lines, Inc. v. Pinkerton Security Systems, Inc.*, 89 F.3d 452, 458-59 (7th Cir. 1996). Further, pursuant to the economic loss doctrine, which has been adopted by the Illinois courts, a party cannot generally recover in tort for purely economic losses.[5] *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982). This is the case even when a plaintiff cannot recover for the alleged harm in an action for breach of contract. *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986). Thus, unless Hartford falls under an exception to the economic loss doctrine, it cannot be held liable under the Illinois Contribution Act.

---

[5] The parties do not dispute that the losses seeking to be recovered by LMOJ, for which Snyder is alleging that Hartford is also liable, are purely economic losses.

There are three common exceptions to the economic loss doctrine, including "(1) where the plaintiff sustained damage, *i.e.*, personal injury or property injury damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *First Midwest Bank v. Stewart Title*, 843 N.E.2d 327 (Ill. 2006). In addition, the economic loss doctrine does not apply when the defendant is also under an extracontractual duty, such as the duty imposed upon an insurance producer pursuant to 735 Ill. Comp. Stat. 5/2-2201(a) to use ordinary care in its dealings with an insured.[6] *Country Mutual Ins. Co. v. Carr*, 852 N.E.2d 907, 915-16 (Ill. App. Ct. 2006).

Here, Snyder first argues that Hartford may be liable under the third exception to the economic loss doctrine as a defendant in the business of supplying information for the guidance of others in their business transactions. (Doc. 17). Generally, Illinois courts have held that insurance companies are not "in the business of supplying information" for the guidance of others in business transactions. *First Midwest Bank v. Stewart Title Guaranty Co.*, 843 N.E.2d 327 (Ill. 2006), *University of Chicago Hosp. v. United Parcel Serv.*, 596 N.E.2d 688 (Ill. App. Ct. 1992), *see also First Magnus Fin. Corp. v. Dobrowski*, 387 F.Supp.2d 786

---

[6] This Illinois statute provides that "An insurance producer . . . shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or the proposed insured." 735 Ill. Comp. Stat. 5/2-2201(a). While Snyder does not specifically refer to this provision, they seem to allude to it in their Response when they note that the "broker to insured" transaction is one of ther recognized exceptions to the economic loss doctrine. (Doc. 75 at 9).

(N.D. Ill. 2005), *Int'l Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.*, 1989 WL 99771, No. 88 C 320 (N.D. Ill. Aug. 18, 1989). While the Snyder parties acknowledge this fact, they argue that the instant case is distinguishable due to Hartford's actions here. According to the Snyder parties, this case is different because here Hartford took "a direct part in indentifying the potential customers, providing information to those customers, drafting the prospecting letter that was to be sent to customers and following up with engaging the customers." (Doc. 75 at 7). In addition, they contend that this case is different because here Hartford took on an active role of providing advertising materials, information, and training and education directly to its insurance producers, including Conklin and Snyder & Snyder.

The Court does not find either of these arguments persuasive. In *Fireman's Fund Insurance Company v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997), the Illinois Supreme Court held that whether the defendant supplies information to its customers is not the important question, the important question is whether supplying that information is the business of the defendant or whether it is "merely ancillary to the sale or in connection with the sale of merchandise or another matter." In other words, the focus of the inquiry is "whether the defendant is in the business of supplying *information* as opposed to providing something tangible." *Stewart Title*, 843 N.E.2d at 339. When the defendant provides information that is incidental to a tangible product, the accuracy of the information can be memorialized in contract terms, and thus the exception does not apply. *Id.*

In the instant case, the information that was provided by Hartford to its customers via advertisements and prospective letters and to its insurance producers via education and training was not its business end. Its business end was to sell insurance policies, a tangible product. *See First Magnus*, 387 F.Supp.2d at 791 ("an insurance company's product is not information, it is insurance."). Advertising one's product, supplying information about one's product, and training insurance producers regarding one's product,[7] does not make the information the product – all of this information remains "ancillary to the sale" of the product itself. Accordingly, the Snyder parties have failed to show that Hartford's actions fall under the negligent misrepresentation exception to the economic loss doctrine.

Alternatively, Snyder appears to argue that Hartford may be liable under an agency theory premised upon Snyder's own liability pursuant to the Illinois statutory duty of ordinary care imposed upon insurance producers. (Doc. 17 at 9-10). Under Illinois law, "the test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Tech., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998). A principal/agent relationship is created when the agent has either actual or

---

[7] To the extent that the Snyder parties are arguing that Hartford is liable to it for breaching a duty to supply them accurate information, they have failed to plead any facts which indicate that Hartford provided any mis-information to them. Further, the facts pled do not satisfy the Court that Hartford was in the business of supplying training to its insurance producers, rather than this training merely being ancillary to the sale of insurance policies. It has not been alleged that such training was in any way separate from the sale of policies, as would be the case if, for instance, Hartford operated educational programs on insurance in general, which it charged insurance producers to attend.

apparent authority to act on the principal's behalf. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). An agent has actual authority when the "principal's words or actions would lead a reasonable person in the agent's position to believe that he or she was so authorized" to act on behalf othe principal. *Id.* "Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." *Id.* at 1065.

While the Snyder parties' appear to argue an agency theory of liability in their Response to Hartford's Motion to Dismiss, they fail to plead such a theory in their Cross-Claim. Although Snyder references an Agency Agreement between itself and Hartford in its Response, this is not pled in the Cross-Claim, nor is it even asserted that they were acting as Hartford's agent. The Snyder parties do allege that Hartford provided them the LMOJ "lead," that they subsequently sent LMOJ the prospecting letter prepared by Hartford, and that they sent information learned from LMOJ to Hartford, however these facts alone do not make it plausible that Hartford had the right to control the manner and method in which the Snyder parties carried out their work with LMOJ, that the Snyder parties' were authorized to bind Hartford, or that LMOJ reasonably believed that the Snyder parties had such authorization. Because the Snyder parties have not pled a plausible claim that they were acting as Hartford's agent in its dealings with LMOJ, and any

independent tort liability of Hartford to LMOJ is barred by the economic loss doctrine, the Snyder parties' Cross-Claim is DISMISSED WITHOUT PREJUDICE.[8]

### III. Third Party Complaints of LMOJ and Lawrence

As a general rule, when all claims over which there are independent bases of federal jurisdiction are disposed of prior to trial, the district court should relinquish control over pendent state law claims rather than resolving them on the merits. *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1250 (7th Cir. 1994). Here, the three claims over which the Court had independent jurisdiction have now been disposed of by the Order and Opinion of August 10, 2010, and its instant decision to dismiss LMOJ's counterclaim the Snyder parties' Cross-Claim. Accordingly, unless the factors of judicial economy, convenience, fairness, and comity dictate that it retain jurisdiction, this Court must dismiss the remaining claims of the LMOJ parties.

Neither party can show cause as to why any of the above factors dictate that the Third Party Complaints of LMOJ and Lawrence should not be dismissed.[9] Therefore, the Third Party Complaint of LMOJ against Snyder (Doc. 8), and the Third Party Complaint of Lawrence against Snyder (Doc. 70) will be DISMISSED WITHOUT PREJUDICE based upon this Court's decion to relinquish jurisdiction

---

[8] The dismissal is without prejudice because, although they have not done so here, the Snyder parties may be able to plead that a principal/agent relationship existed. However, because the Snyder parties have failed to do so here, the Court has not considered, and thus has no opinion on, whether or not such a pleading would result in any liability for Hartford.

[9] The Court notes that all persons making up the LMOJ and Snyder parties are citizens of Illinois (Doc. 8), such that there is no independent diversity jurisdiction over the Third Party Complaints; nor are either of the Third Party Complaints based upon any federal question. Thus, the Court's only jurisdiction over the claims therein was supplemental to its jurisdiction over Hartford's claim against LMOJ, which has been dismissed.

over them. Accordingly, Snyder's Motion to Dismiss Lawrence's Third Party Complaint is rendered MOOT.

### Conclusion

For the foregoing reasons, LMOJ's Motion to File a Reply is GRANTED and the Reply is DEEMED filed, LMOJ's Motion for Reconsideration is DENIED, LMOJ's Motion for Leave to File an Amended Counterclaim is DENIED, and LMOJ's Counterclaim against Hartford is DISMISSED as a matter of law. In addition, Hartford's Motion to Dismiss the Snyder parties' Cross-Claim is GRANTED and the Cross-Claim is DISMISSED. Finally, the Third Party Complaint of LMOJ and the Third Party Complaint of Lawrence are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction pursuant § 1367. Accordingly, the Snyder parties' Motion to Dismiss Lawrence's Third-Party Complaint is rendered MOOT. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 12th day of October, 2010.

                                                s/ Joe B. McDade
                                              JOE BILLY McDADE
                             United States Senior District Judge